(No. 37932.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* JOHN LEE TAYLOR, Plaintiff in Error.

*Opinion filed January 21, 1965.—Rehearing denied March 17, 1965.*

MORT A. SEGALL, of Champaign, appointed by the court, for plaintiff in error.

WILLIAM G. CLARK, Attorney General, of Springfield, and ROBERT J. WAALER, State's Attorney, of Urbana, (FRED G. LEACH, Assistant Attorney General, and ANDREW STECYK, JACK WAALER, and JAMES L. HAFELE, Assistant State's Attorneys, of counsel,) for the People.

Mr. JUSTICE SCHAEFER delivered the opinion of the court:

The defendant, John Lee Taylor, was tried by jury in the circuit court of Champaign County and convicted of the crimes of rape and burglary. He was sentenced to the penitentiary on the rape charge for a term of 25 to 50 years and on the burglary charge for a term of 15 to 40 years, the sentences to be served concurrently. We have jurisdiction on direct appeal because of constitutional claims advanced by the defendant.

Before discussing these claims, we shall consider the defendant's argument that the evidence was insufficient to establish his guilt beyond a reasonable doubt. The victim of the crimes testified that as she was reading in bed at about 12:30 A.M. she heard a noise from the kitchen of her basement apartment. She went to the kitchen to investigate and saw a man stepping off the sink into the kitchen. He choked her and covered her eyes. She became unconscious and when she awoke she was on her bed, gagged and tied, with her head completely covered. The intruder told her that if she screamed or moved he would slit her throat. He then untied her legs and had intercourse with her. After he left she called a friend and told her she had been raped and the friend called the police. The victim was taken to the hospital where a medical examination disclosed that she had recently had intercourse, and also that she had lacerations on her face. The victim was unable to identify the defendant.

A detective testified that he checked the apartment for fingerprints and found some prints on the inside of the lower window sash of the kitchen window. These prints were in a position indicating that they had been placed there by someone opening the window from the outside. An F.B.I. agent was called to assist the detective and pictures were taken of the prints and the prints were "lifted". The photographic negatives were sent to F.B.I. headquarters and about a week later the F.B.I reported that the prints were those of John Lee Taylor. A warrant was issued for Taylor's arrest, but he was not arrested until about 16 months

later when he was located in Chicago. At the trial an F.B.I. fingerprint expert testified that the print on the inside of the window was the defendant's. Although the defendant testified in his own behalf he did not attempt to explain the presence of his fingerprint on the window.

The defendant concedes that this evidence is sufficient to prove that the crimes of burglary and rape occurred but contends that it does not establish that he committed them. The defendant relies upon that fact that the evidence showed that there were other smudged fingerprints on the window, which were not identified. He argues that these prints may have been those of someone else and that there is therefore a reasonable doubt that he is the guilty party. The authorities cited in support of this argument are inapplicable, for they deal with situations where the presence of the defendant's prints and the prints of others could be reasonably explained because of the public accessibility of the place where the prints are found and the possibility that the prints were made at a time other than when the offense occurred. (See: Cases collected, 28 ALR2d 1155.) Even if it be conceded that in the present case there were prints of others on the window (perhaps the prints of the victim), the unexplained presence of the defendant's prints is not consistent with any reasonable hypothesis of innocence. We therefore hold that the evidence establishes the defendant's guilt.

We now turn to a consideration of the defendant's constitutional claims. He argues that he was denied a speedy trial but we find it unnecessary to consider the merits of this claim, for the record discloses that the issue was never presented to the trial court, either by a motion prior to trial or in the post-trial motion. The claim was therefore waived and will not be considered. *People* v. *Morris,* 3 Ill.2d 437, 442.

The defendant also argues that he was deprived of a fair

and impartial trial by reason of alleged prejudicial conduct by the court and the prosecutor. We do not believe it is necessary to recite in detail the numerous examples of such alleged conduct cited by the defendant. Many of these examples are unsupported by the certified record and are only contained in an uncertified record prepared by the defendant's counsel, which was filed by leave of court. Although we granted leave to file this record, we have determined, after a complete examination of the certified record and the supplemental record, that we must base our decision on the certified record alone. This record shows that on several occasions the court and the prosecutor lost patience with defense counsel because of repeated objections, interruptions and requests for conferences in chambers. Our review of the record satisfies us that the remarks of the court and the prosecutor, while ill-advised, were provoked by the conduct of defense counsel and can not be held prejudicial error.

It is also urged that the defendant was denied his constitutional right to counsel. The record shows that while defense counsel was out of the court room the prosecutor commenced examining a witness for the State. After she gave her name and address and testified that the victim had been at her house earlier on the night of the attack, counsel returned and moved to strike the testimony or in the alternative asked that the reporter read the testimony which the witness had given. Both motions were denied. While it is true that a defendant has the right to the assistance of counsel at every stage of the trial, a judgment will not be reversed because of the absence of counsel where there is no possibility of prejudice to the defendant. (*Walton* v. *United States,* (D.C. cir.) 202 F.2d 18; *Martin* v. *United States,* (5th cir.) 182 F.2d 225.) One motion or the other should have been allowed, since counsel's absence was inadvertent. But the testimony which was heard in his absence

was harmless, and there was no basis for objection to it. No prejudice resulted from counsel's brief absence and the denial of his motions does not require reversal.

The defendant also urges that he was deprived of a fair trial because the court remarked to the jury that the defendant had been handcuffed. The record shows that when court convened defense counsel advised the court that they were having trouble getting the handcuffs off the defendant and demanded that the jury be kept out of the court room so that they would not see him with the handcuffs on. The court ordered the defendant removed and he was taken into an anteroom in order to remove the handcuffs. In explaining the delay in the trial the court told the jury that they could not get the handcuffs off the prisoner. This remark should not have been made. But the jury knew that the defendant was in custody, charged with two serious felonies, and it was not prejudicial for the court to inform the jury that he was handcuffed while being brought to the court room. See: *Way* v. *United States,* (10th cir.) 285 F.2d 253.

The next claim is that the defendant was denied a fair trial because of prejudicial newspaper publicity during the trial. The articles in question contained accounts of the trial and stated that the trial had been marked by frequent interruptions by defense counsel which aroused the ire of the court and brought rebukes upon counsel. One article was entitled "Teacher Testifies: No Positive Identification of Assailant." This article stated that the victim testified that her assailant resembled the defendant but that she could not positively identify him. The article also said that the defendant had been arrested by the F.B.I. on a charge of unlawful flight to avoid prosecution on the rape and burglary charges. The other article was entitled "Sparks Fly Again in Rape Trial," and also contained an account of some of the remarks of the court and defense counsel. Insofar as the articles related the differences which had

occurred between the court and counsel, they appear to be accurate statements of the facts. The jury had first-hand knowledge of these matters and the newspaper articles cannot be said to be prejudicial. The statement that the victim said that the defendant resembled the intruder was not accurate, since she did not so testify. However, in view of the clear evidence of defendant's guilt and the fact that the headline and text of the article both stated that she could not identify the defendant, we are of the opinion that the statement was not prejudicial. The article that referred to defendant's arrest did not imply the commission of other crimes by the defendant and only said that he had been arrested on a charge of unlawful flight to avoid prosecution of the charges for which he was on trial. The defendant's attorney was himself responsible for any inference of flight that reached the jury. On cross-examination of a police officer he brought out the fact that the defendant had left Champaign shortly after the crime, and then asked, "When did the F.B.I. begin to look for him", eliciting the answer, "It was about six months after he got away from Champaign." We are of the opinion that the newspaper articles did not deprive the defendant of his right to a fair trial.

Two other arguments require mention. It is contended that the trial court erred in admitting testimony that the victim told her friend that she had been raped. This testimony was clearly admissible. (*People* v. *Damen,* 28 Ill.2d 464.) Defendant also argues that he was prejudiced by denial of a continuance to enable him to examine the finger print evidence and by denying his motion to inspect specimens obtained by the doctor who had examined the victim. The record shows that defendant was given an opportunity to inspect the fingerprint evidence and that he did inspect and photograph the prints. The record also shows that the doctor prepared slides and made notes of his examination. The slides and notes were destroyed after a memorandum had been prepared. A copy of the memorandum was fur-

nished to the defense counsel. Failure to order production of non-existent evidence was not error.

A careful consideration of the entire record and the many claims advanced by the defendant satisfies us that he received a trial free from prejudicial error and that his guilt was established beyond a reasonable doubt. The judgment of the circuit court of Champaign County is affirmed.

*Judgment affirmed.*