THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* NATHAN N. BUTLER, JR., Defendant-Appellant.

(No. 11621;

Fourth District—July 5, 1973.

John F. McNichols, of Defender Project, of Springfield, (Bruce L. Herr, Staff Attorney, of counsel,) for appellant.

Lawrence E. Johnson, State's Attorney, of Urbana, (Robert James Steigmann, Assistant State's Attorney, and G. Douglas Grimes and Alex M. Abate, Senior Law Students, of counsel,) for the People.

Mr. JUSTICE SMITH delivered the opinion of the court:

Defendant was convicted of forgery and theft under $150, both crimes involving postal money orders. The principal point on appeal relates to the denial of the motion to suppress the money orders (other than the one which was allegedly forged) as evidence. Thirteen money orders were found in the glove compartment of an automobile which defendant was driving, and he argues that the search was neither incidental

to his arrest nor was there probable cause for a non-incidental search of the vehicle later on. We agree with him that the search cannot be justified as one incident to his arrest, since it was not searched at the time (which is not to say that his arrest was not justified). Hence we take up the remaining aspect as to whether the search can otherwise be legally justified. A recital of the salient facts is in order.

Defendant's version of events was that he borrowed a car, drove a friend to a shopping center, he going into a grocery store and the friend to a bank. He testified that when he came out, he saw another friend and offered him a ride. The first friend came running past the car, calling out that the police were after him, and continued his run. When the police appeared, defendant and friend No. 2 drove off and were stopped shortly thereafter by them and taken to the police station. The car at that time was not searched and remained where it had been stopped. More or less contemporaneously, the radio dispatcher for the police department received a telephone call from an unidentified woman at the bank where friend No. 1 had supposedly gone advising that a person was trying to cash a forged money order. While she was on the telephone such person left. She concluded her report to the dispatcher with the information that a red Volkswagen with a black right front fender and a given Illinois license plate was involved. The woman at the bank gave no physical description other than that the person involved was a Negro. The dispatcher thereupon broadcast this information over the police network. The broadcast was received by a police officer and upon seeing the described Volkswagen, stopped it. As we have seen, defendant and his companion were then taken to the police station but by other officers in a back-up car and their car remained where it was. The officer who had stopped the car then contacted headquarters and he and another officer later returned and searched the car finding 13 money orders between the pages of a book in the glove compartment. This second officer had previously on that very day investigated a theft of 22 postal money orders from a substation located in a food store. He also heard the dispatcher's broadcast and the further intelligence that the car in which the defendant and friend No. 2 were riding had been stopped. He thereupon went to the police station and he and the other officer who had stopped the car then went to where it was parked and searched it. The president of the bank testified that a teller had reported to him that somebody was trying to cash a money order which had been reported as stolen and he followed this person out of the bank but lost him when he disappeared in a department store. Upon returning to the bank the president observed a Volkswagen with an occupant wearing a coat

similar to that worn by the person he had followed. He noted the license number and gave it to the police who had arrived in the meantime. He was unable to identify the person in the bank with the occupant of the vehicle.

██ We view our opinion in *People v. Powell,* 9 Ill.App.3d 54, 291 N.E.2d 669, as controlling. If so, the search here can be justified on the basis that the searching officers had probable cause to believe that they would find in the car the instrumentalities of crime or evidence pertaining to a crime. Why did they have probable cause? We have these facts: (1) the searching officers had heard on their police radio that someone was attempting to pass a forged postal money order; (2) they had known of a theft of 22 postal money orders from personal investigation that morning and prior to hearing the radio dispatches; (3) they had intelligence to the effect that the suspect was in a described vehicle with a given license number; (4) defendant was found in the described vehicle; and (5) that defendant fitted the description given, such as it was. These facts, it seems to us, furnish probable cause that a search of the vehicle would disclose the stolen money orders or maybe the one someone had attempted to pass. The fact that the latter was not in the glove compartment has nothing to do with the question of whether or not here was pre-existing probable cause any more than finding it would have justified a search lacking probable cause. As we said in *Powell,* this is not building inference upon inference—each inference comes from facts that the officers had and in our opinion supplied the basis for them to have probable cause to believe that either the money order which was the subject of forgery, or the stolen money orders, or both, would be in the car, that is, that the vehicle contained the fruits of a burglary or evidence of an attempt to pass a forged instrument, or both. Justification for the search here, as in *Powell,* finds its authority in *Chambers v. Maroney,* 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419. In that case, it was held that even though a search could not be justified as incident to an arrest, it could be justified on the basis of the existence of probable cause to search an automobile. The Supreme Court recognized that automobiles could be searched without a warrant in circumstances which would not justify a warrantless search of a house or an office—the so-called automobile exception—provided that there was probable cause to believe that the vehicle contained articles that the police were entitled to seize and there were exigent circumstances—that there was a constitutional difference between a search of a store or a house, and the search of an automobile, because an automobile could be quickly moved (an exigent circumstance), thus the search could be upheld on a theory

wholly different from that justifying a search incident to an arrest. In *Chambers,* following a robbery, the police received a description of the car and the clothing worn of the four alleged to have been involved. The police stopped the described car with four men in the described clothing. Though arrested, the car was not searched—but rather driven to the police station. Then followed a warrantless search of the car which produced revolvers, ammunition, and property taken in the robbery. As we have seen, the court held that such search was constitutionally permissible under the automobile exception.

■■■ Defendant stresses that the dispatching officer knew no more than he had heard from an unidentified caller. Of course, this is true—but such fact, does not argue against his relaying such information over the police network and the searching officers relying on same—simply because he didn't know whether the facts related to him were true or not. A citizen's report of criminal activities to the police is not the same as that of an informer. And certainly what one officer knew and communicated to others furnishes facts on which probable cause can be based. As was said in *People v. Peak,* 29 Ill.2d 343, 349, 194 N.E.2d 322, 326:

> "When the officers are working together * * * the knowledge of each is the knowledge of all and the arresting officer [has] the right to rely on the knowledge of the officer giving the command together with his own personal knowledge."

To the same effect is *United States v. Ventresca,* 380 U.S. 102, 111, 13 L.Ed.2d 684, 690, 85 S.Ct. 741, 747 (1965), "Observations of fellow officers * * * engaged in a common investigation are plainly a reliable basis for a warrant applied for by one of their number".

■■ *People v. Canaday,* 49 Ill.2d 416, 275 N.E.2d 356, is very much in point. There the arresting officers in another county received radio intelligence of a burglary. The report was that there had been a burglary accompanied by the theft of some television sets and the vehicle used was described. The police who received the report next observed persons in a vehicle which matched the description of the car as radioed and ordered it pulled over to the side of the road where they observed some television sets partially covered by a blanket. The persons were placed under arrest and searched. So was the car, at least partially, as a revolver was found under the front seat. The car then was driven to the sheriff's office and a subsequent search was had—with permission. About an hour after that, the trunk was searched and more television sets as well as two crowbars, a flashlight and some gloves were found. Defendants there moved to suppress the articles seized in this latter

search. They argued that because the search was not substantially contemporaneous with the arrest and not in the immediate vicinity of the arrest, the search was bad. Citing there, as we do here, *Chambers,* our supreme court said:

> "The court [in *Chambers*] held that the warrantless search of the car after it had been taken to the police station was not in violation of the fourth amendment. There was probable cause to arrest the occupants of the station wagon and just as obviously probable cause to search the car for guns and stolen money. Here, too, we consider there was probable cause to arrest the occupants of the vehicle and to search the car. The Supreme Court rejected the contention that the search without a warrant at the police station was improper."

We conclude, as we have said, that the searching officers had probable cause, and if we are right, the search was justified. We can distinguish *Coolidge v. New Hampshire,* 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564, urged here as controlling by defendants in the same manner the court did in *Canaday:*

> "The Supreme Court recently, in *Coolidge v. New Hampshire,* 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564, found warrantless searches of an auto to have been objectionable but under completely distinguishable circumstances. The court drew a distinction between *Chambers,* which corresponds to the case here, and the question in *Coolidge.* It said: 'The rationale of *Chambers* is that *given* a justified initial intrusion, there is little difference between a search on the open highway and a later search at the station. Here, we deal with the prior question of *whether* the initial intrusion is justified. For this purpose, it seems abundantly clear that there is a significant constitutional difference between stopping, seizing, and searching a car on the open highway, and entering private property to seize and search an unoccupied, parked vehicle not then being used for any illegal purpose.'"

Defendant next argues that the *theft charge* was not proved beyond a reasonable doubt. This point requires an additional recital of the circumstances—as the crime was proved if at all by circumstances alone. Defendant likewise maintains that the charge of forgery lacked the requisite proof. We can consider both of these points together, as, proof as to each is, in our opinion, proof of the other—the circumstances intertwine.

■■ We have these facts in addition to those already narrated. First, the circumstance of the theft of 22 money orders. Relating to the mode of proof of this fact, defendant argues that such was made or based solely

on hearsay. But he made no objection to this hearsay proof at the trial, thus such point is waived—as only by objection "generally" can an issue of law be posited for review. Having been properly admitted its believability is for the jury. The stolen money orders were serially numbered, and the 13 that were found in the glove compartment matched up with their missing numbers taken in the theft. Unique, perhaps is the fact that the money order alluded to on the motion to suppress was not the subject matter of the forgery charge, but another money order that defendant successfully passed at another bank. This money order so passed by defendant also matched serially with one of the missing numbers of the 22 stolen money orders. Relating to the forgery charge, there was testimony that the postal money order was falsely made (Count I)—in the sense that it had not been properly stamped, signed and initialed, and then passed (Count II). Both counts read that the money order "purported to have been stamped and made by an agent of the U.S. Postal Department" and the proof was that it was not so "made".

■■ These circumstances are not in dispute—in the sense that there was contrary evidence. They stand unrebutted—and no triers of the fact could so find them to be true. Defendant does not argue this—he simply says that these circumstances do not raise the type of inferences that will support the quantum of proof required to convict in criminal cases. Briefly put we have these facts: Defendant passes a falsely made and stolen money order; he is the driver of an automobile which has 13 of the stolen money orders in its glove compartment; and all of these circumstances occur on the same day following the theft—we say "following" because the money orders were not reported as stolen the day before but on the morning of the day in question. We think the inferences—as opposed to suspicions—that can be drawn from these circumstances are, (1) defendant knowingly obtained and exerted unauthorized control over 14 money orders, knowing them to have been stolen by another or under such circumstances as would reasonably induce him to so believe, with intent to permanently deprive the owner thereof, and (2) knowingly and with intent to defraud, possessed and passed a U.S. Postal Money Order, purporting to have been made by an agent of the U.S. Postal Department when in fact it was not. In other words, the jury was justified in finding defendant guilty of the theft just described and the variants of forgery just described. Accordingly, there was the requisite proof to support both charges.

■■ The forgery charge came via indictment—two counts—possessing and passing. The theft charges were by information—eventually two counts. The first information failed to charge the crime of theft. The

State's attorney apparently recognizing this, requested leave to amend and when that was denied, filed a second information which did correctly charge the crime. The first information was not dismissed and a general verdict of guilty as to theft returned. Defendant argues that we should reverse the conviction as to the flawed information. We agree. This does not, however, affect the conviction of theft premised on the valid information.

■■ The opening statement foretold of a witness' testimony who did not appear. He was to be the president of the bank who took down the license number and otherwise described the Volkswagen on the hearing to suppress. The jury was advised that the president would tell them that "someone tried to cash a postal money order" and that the person dressed in the same fashion as the one presenting the money order left in the described Volkswagen. Of course, it is improper, at least with foreknowledge, to include matters in opening statement that are not thereafter proved. There is no suggestion here of impropriety and hence our discussion is limited as to whether or not this statement of things to come was prejudicial. In our opinion, in its context, it was not. Part of the context was the opening statement itself, with the cautionary remark that, "Whatever I may say here is not evidence and I hope you will understand that * * *. So everything I say to you now is not evidence but is based upon the premise that we expect to prove these things." There is no direct statement that the missing bank president would identify the defendant—but rather that "someone" who tried to cash a money order was dressed in the same fashion as the person in the Volkwagen. That's all that was said, as we have seen. Its absence could have been commented on in argument adversely to the prosecution. We say this, not because it was or should have been, but failure to prove that which is promised sometimes has a boomerang effect. As we have said, we do not deem here this promise of proof to come when it did not come as prejudicial.

■■ Objection is made to the argument that defendant by being in the driver's seat raises an arguable presumption that it was defendant's car. "If you don't presume the car was his, what do you presume?" This is an argument and a reasonable one. But, defendant urges that it was deliberately misleading, because the prosecution knew from the hearing on the motion to suppress that the car did not belong to defendant. This is assuming a great deal, but even so, we should not view this statement in its context as inflammatory, and if not, it was not error. We note in passing the absence of an objection. The judgment appealed from is affirmed except the judgment on the information charging theft identified

as "Information—Count II". As to this judgment, the cause is reversed with directions to vacate the judgment and issue an amended *mittimus*. Otherwise, the judgments appealed from are affirmed.

Affirmed in part; reversed and remanded in part with directions to issue an amended *mittimus*.

CRAVEN, P. J., and SIMKINS, J., concur.