THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
RICKY LEWIS TALLEY, Defendant-Appellant.

Fourth District No. 4—86—0100

Opinion filed February 24, 1987.

972

Daniel D. Yuhas and Allen H. Andrews, both of State Appellate Defender's Office, of Springfield, for appellant.

Jeffrey K. Davison, State's Attorney, of Decatur (Kenneth R. Boyle, Robert J. Biderman, and Kenneth R. Baumgarten, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE SPITZ delivered the opinion of the court:

Defendant was charged with home invasion and residential burglary (Ill. Rev. Stat. 1985, ch. 38, pars. 12—11, 19—3). The charges arose from an incident of September 26, 1985, wherein a black male forced his way into the home of a 77-year-old man and held the man at knife point while another man went through the rooms of the house. Defendant's first jury trial ended in mistrial. After a second jury trial, defendant was convicted of both offenses and sentenced to terms of six years' imprisonment and four years' imprisonment, respectively, to be served concurrently. Defendant appeals from the judgment of the circuit court of Macon County. We affirm.

On appeal, defendant raises the following arguments: (1) whether he was proved guilty beyond a reasonable doubt of home invasion and residential burglary on the basis of fingerprint evidence; (2) whether comments in the prosecutor's opening statement amount to reversible error, where the prosecutor informed the jury that Terry Smith would testify that he had committed the offenses with the defendant, but failed to produce this testimony when Smith refused to testify; (3) whether the trial court erred in refusing to grant a mistrial based on defendant's right to be tried by an impartial jury, when several jurors had read a newspaper article about Terry Smith's refusal to testify against defendant; (4) whether comments by the prosecutor in closing argument, referring to defendant's failure to call alibi witnesses whose existence was elicited during cross-examination of defendant by the State, amounted to reversible error; and (5) whether the trial court erred in denying defendant's motion for a mistrial based on the State's use of two peremptory challenges to exclude black veniremen from jury service.

At trial, the victim of the offense testified that he had lived in his four-room house in Decatur for 45 years, living alone since 1972. A black man knocked on his door the evening of September 26, 1985, and the victim declined to let the man use the phone. The black man jerked the screen door open and shoved the victim across the room into a chair. The victim testified that the man sat on a footstool beside him, picked up a knife, held it to the victim's throat and said he was going to kill him. Another black man entered the house. Although the perpetrators turned the light in the living room off and the victim never saw the second black man's face, he identified the man who

first entered the house and held him at knife point as Terry Smith. The victim testified that while Smith kept him in the chair, the second man went through the rooms of his house, turning things over and throwing things out of drawers. He said he was kept in the chair for 8 to 10 minutes before Smith took him in the bedroom, made him lie on the floor, and tied him with an extension cord and piece of rubber hose. Smith took the victim's money from his billfold, $46, and ring from his hand.

The victim testified that he did not know the defendant and that he gave neither defendant nor Smith permission to enter his house, take any items, or threaten him. He identified photographs, including one taken in his bedroom showing several box lids among items strewn upon the bed. He testified these items were usually kept in a dresser drawer, had been in the drawer more than 10 years, and had not been out of the bedroom in 10 years. He further testified that he had never let the defendant or any black male into his bedroom and had not let defendant handle the items before this incident. The victim identified the money recovered from Smith as being the denominations taken from his wallet during the offense, and the ruby ring as that taken from his hand.

Decatur police officer Robert Harvey testified he received a call to back up another officer on the home invasion. He testified that he stopped and questioned a black male, Terry Lee Smith, walking in an alley about two blocks from the residence. Smith was carrying $46. After Smith was transported to the police station, a search of the squad car disclosed the ruby ring.

Officer Mike Mowen testified as crime-scene technician and fingerprint expert. He processed the scene of the offenses at about 7:45 p.m. on September 26, 1985. He testified that the rooms of the house were in general disarray, and identified photographs he took of items processed for fingerprints, including two box lids shown on the victim's bed and an exhibit showing the latent fingerprint lifts made from the lids.

Decatur police detective George Lebo testified as a fingerprint expert that he had compared the prints lifted from the box lids to those taken from the defendant. He opined that, within a reasonable degree of scientific certainty, the prints from the box lids matched defendant's known prints—two separate lifts of his left thumbprint on one box lid, and the latent prints of the left-ring and left-middle fingers of defendant on the other box lid.

Defendant took the stand in his own defense and denied going to the victim's house or invading it on September 26, 1985. He further

denied going with Smith to the victim's house, taking items from him, and tying him up and leaving him there.

On cross-examination, it was elicited from defendant that on September 26, 1985, he was with his brother, Gordon Talley, at the residence of Annette Davis (Gordon's girlfriend) from about 5:30 p.m. until 12:30 p.m. the next afternoon. Defendant testified he played cards that day. He stated that his little brother, Charles Talley, and Charles' girlfriend, Aparreed, were also there; and that these five people were at the house with him the whole time. Defendant stated he did not see Terry Smith on the day of the offenses. Defendant testified that he did not know the victim, had never been inside the victim's house, and had never touched any boxes there.

On appeal, defendant argues he was not proved guilty beyond a reasonable doubt of home invasion and residential burglary since the victim was unable to identify him as one of the perpetrators and only the fingerprint evidence linked him to the offenses. The law in this area is clear:

> " 'Circumstantial evidence is the proof of certain facts and circumstances in a given case from which the jury may infer other connected facts which usually and reasonably follow according to the common experience of mankind.' (*Devine v. Delano* (1916), 272 Ill. 166, 179-80[, 111 N.E. 742]; 29 Am. Jur. 2d *Evidence* sec. 264 (1967).) Circumstantial evidence is generally sufficient to support a conviction if it is inconsistent with any reasonable hypothesis of innocence, but the trier of fact need not search out all possible explanations consistent with innocence and raise them to a level of reasonable doubt. (*People v. Hancock* (1978), 65 Ill. App. 3d 694, 698[, 382 N.E.2d 677].) Fingerprint evidence is circumstantial evidence which attempts to connect the defendant to the offense alleged. (*People v. Malmenato* (1958), 14 Ill. 2d 52, 62[, 150 N.E.2d 806]; *People v. King* (1980), 88 Ill. App. 3d 548, 552[, 410 N.E.2d 1070].) In order to sustain a conviction solely on fingerprint evidence, fingerprints corresponding to the fingerprints of the defendant must have been found in the immediate vicinity of the crime under such circumstances as to establish beyond a reasonable doubt that the fingerprints were impressed at the time the crime was committed. *People v. Taylor* (1965), 32 Ill. 2d 165, 168[, 204 N.E.2d 734]; *People v. Malmenato* (1958), 14 Ill. 2d 52, 62[, 150 N.E.2d 806]; *People v. Reno* (1975), 32 Ill. App. 3d 754, 758[, 336 N.E.2d 36]." (*People v. Rhodes* (1981), 85 Ill. 2d 241, 248-49, 422 N.E.2d 605, 608.)

Accord, *People v. Yates* (1983), 98 Ill. 2d 502, 525-26, 456 N.E.2d 1369, 1381, *cert. denied sub nom. Williams v. Illinois* (1984), 466 U.S. 981, 80 L. Ed. 2d 836, 104 S. Ct. 2364; *People v. Taylor* (1965), 32 Ill. 2d 165, 168, 204 N.E.2d 734, 736 (despite presence of other "smudged" fingerprints on window of burglarized apartment, unexplained presence of defendant's prints is not consistent with any reasonable hypothesis of innocence); *People v. Poole* (1981), 99 Ill. App. 3d 939, 941-42, 426 N.E.2d 306, 308-09; *People v. Watts* (1983), 98 Ill. 2d 70, 74, 456 N.E.2d 56, 58-59 (where defendant's fingerprints were found on bottom of desk drawer at scene of crime, error in using term "doubt" instead of "theory" in circumstantial evidence instruction was harmless); *People v. King* (1978), 61 Ill. App. 3d 49, 57, 377 N.E.2d 856, 862; see generally Annot., 28 A.L.R. 2d 1115 (1953).

The defendant does not have the burden of proving his innocence but, when he takes the stand, the reasonableness of his testimony will be judged by its improbabilities by the trier of fact. Where the evidence is conflicting, the credibility of the witnesses and the weight to be given their testimony is a question for the finder of fact. (*People v. Rhodes* (1981), 85 Ill. 2d 241, 250-51, 422 N.E.2d 605, 607, quoting *People v. Malmenato* (1958), 14 Ill. 2d 52, 60-61, 150 N.E.2d 806, 811, *cert. denied* (1958), 358 U.S. 899, 3 L. Ed. 2d 148, 79 S. Ct. 222.) Upon careful review we conclude that although the fingerprint evidence was circumstantial evidence of defendant's guilt, it was circumstantial evidence of the highest order. Defendant was proved guilty beyond a reasonable doubt.

Defendant also challenges the sufficiency of Detective Lebo's testimony, maintaining that the State failed to elicit facts indicating the basis for Lebo's opinion that defendant left the latent prints. The record shows that the defense counsel conceded the foundation requirements for Lebo's testimony, had the opportunity to cross-examine Lebo, and did so. Additional detail in the testimony was a matter for cross-examination and went to the weight of the testimony. The jury heard the testimony and had the responsibility to judge the credibility of the witnesses and ascertain the truth. We find defendant's argument to be without merit. (*People v. Yates* (1983), 98 Ill. 2d 502, 525, 456 N.E.2d 1369, 1381.) We likewise reject defendant's objection that Detective Lebo did not testify that the latent prints were absolutely defendant's, saying only that they matched within a reasonable degree of scientific certainty. The testimony was sufficient.

Defendant next argues that the prosecutor's comments in opening statement amounted to reversible error. His comment was as follows:

"The police were called. Officer Robert Harvey from the city police department will testify he arrested one of these persons a few blocks away from the house. This was Terry Smith, a black male. He found some items on Mr. Smith, which matched items taken from this home invasion and burglary. *Mr. Smith* made some statements and he *will testify*, too, that *he did go to that house and commit a theft and home invasion and Ricky Talley, this defendant, was with him.*" (Emphasis added.)

The State called Terry Smith outside the presence of the jury. Smith declined the State's order of immunity, refused to testify, and was held in contempt. After the State rested, defense counsel moved for a mistrial based on (1) the prosecutor's remark in opening statement that Smith would testify that he committed the offenses with defendant, and (2) the prosecutor's failure to present such testimony. The prosecutor represented that Smith changed his mind at the last minute and had been willing to testify the day before and until 1:00 on the afternoon of trial. The trial court denied the motion for a mistrial, finding that the statements of the prosecutor were not improper based upon the last information he had from the witness. When this argument was renewed in defendant's post-trial motion and argued in court, the prosecutor represented that Smith had been willing to testify until about 10 minutes before he was put on the stand. In denying the post-trial motion, the court specifically disagreed with defense counsel's interpretation that the prosecutor's comment in opening statement had been made in bad faith.

It is improper for a prosecutor to comment on what testimony will be introduced at trial and then fail to produce that evidence. (*People v. Warmack* (1980), 83 Ill. 2d 112, 125, 413 N.E.2d 1254, 1260.) While error may occur when the prosecution asserts in the opening statement the facts or propositions on which no evidence later is presented (*People v. King* (1986), 109 Ill. 2d 514, 535, 488 N.E.2d 949, 960), in order to constitute reversible error, remarks by counsel must be such as to give reasonable grounds for believing that the jury was prejudiced thereby and that its verdict was affected by the remarks (*People v. Allen* (1959), 17 Ill. 2d 55, 63, 160 N.E.2d 818, 824; *People v. Jenko* (1951), 410 Ill. 478, 485, 102 N.E.2d 783, 786; *Siebert v. People* (1892), 143 Ill. 571, 591, 32 N.E. 431, 436). The authority to declare a mistrial is within the discretion of the trial court and is not subject to review absent an abuse of discretion. (*People v. Chaffin* (1971), 49 Ill. 2d 356, 362, 274 N.E.2d 68, 71-72 (and cases cited therein).) The character and scope of argument to the jury is left largely to the trial court and every reasonable presumption must be

indulged that the trial judge has performed his duty and properly exercised the discretion vested in him. *People v. Smothers* (1973), 55 Ill. 2d 172, 176, 302 N.E.2d 324, 327.

■ Bearing in mind this standard of review, we note that the trial court expressly disagreed with defense counsel's suggestion that the prosecutor's statement had been made in bad faith. On this record, we find no abuse of discretion. *People v. Butler* (1973), 12 Ill. App. 3d 541, 548, 298 N.E.2d 798, 802-03; *People v. Moore* (1980), 90 Ill. App. 3d 760, 766, 413 N.E.2d 516, 521-22; *People v. Harris* (1979), 70 Ill. App. 3d 363, 368, 387 N.E.2d 1109, 1113; see generally Annot., 16 A.L.R. 4th 810 (1982 & 1986 Supp.).

We find inapposite *Bruton v. United States* (1968), 391 U.S. 123, 20 L. Ed. 2d 476, 88 S. Ct. 1620, and *Lee v. Illinois* (1986), 476 U.S. ___, 90 L. Ed. 2d 514, 106 S. Ct. 2056, relied on by defendant. These decisions involved the propriety of admitting accomplice confessions in statements which incriminate the defendant, not an issue presented here. Also inapposite are cases such as *People v. Wilson* (1977), 66 Ill. 2d 346, 349, 362 N.E.2d 291, 292, stating the law on allowing uncorroborated accomplice testimony as the basis for a conviction, not an issue here.

In this case, the jury was instructed that opening statements are not evidence and the State made no further reference to Smith's having identified defendant as involved in the offense. Moreover, we conclude that the fingerprint evidence in this case was sufficient to sustain a conviction.

■ Defendant next maintains that the trial court erred in refusing to grant a mistrial based on the defendant's right to be tried by an impartial jury, since several jurors read a newspaper article, printed during the trial, on codefendant Smith's refusal to testify against him. A reading of the record shows that four jurors had had some exposure to the article. Of the three who continued to sit on the jury after questioning by the court, one juror had read the article and two jurors had read part of it. Each of these jurors was questioned by the court and the prosecutor and indicated they (1) would be fair and impartial; (2) understood they must decide the case on the basis of evidence presented in court and not material in the newspaper article; and (3) believed they could do so. As to these three jurors, although offered an opportunity in each case, defense counsel asked no questions nor made any request for their further admonishment. An alternate juror had not read the article, but her husband had commented upon it to her. She was questioned by the court, defense counsel asked one question, and she was discharged. The jury was instructed

that the evidence which it should consider consisted only of the testimony of the witnesses and the exhibits which the court had received and that neither opening statements nor closing statements were evidence and any statement or argument made by the attorneys not based on the evidence should be disregarded. (Illinois Pattern Jury Instructions, Criminal, Nos. 1.01, 1.03 (2d ed. 1981) (IPI Criminal 2d).) The record does not reflect that defense counsel requested either specific admonishment of one or more of the three jurors who returned to the jury, or any further cautionary remarks or instruction to the jury as a whole.

It is inherent in a defendant's right to a fair trial that he receive a trial by an impartial jury free from outside influence. A verdict must be based upon the evidence received in open court and not from outside sources. (*Sheppard v. Maxwell* (1966), 384 U.S. 333, 16 L. Ed. 2d 600, 86 S. Ct. 1507.) When a trial court becomes aware that jurors have been exposed to news articles, the court must make a meaningful examination of the jurors to determine any prejudice. (*People v. Cain* (1967), 36 Ill. 2d 589, 596, 224 N.E.2d 786, 790.) A motion for a mistrial based on publication of a news item is addressed to the sound discretion of the trial court, the exercise of which is always subject to review, and its abuse will constitute reversible error. The question is whether the jurors or any of them have been influenced or prejudiced to the extent that they would not or could not be fair and impartial. Each case must be determined on its own peculiar facts and circumstances, with due consideration to the nature and character of the statements themselves. (*People v. Malmenato* (1958), 14 Ill. 2d 52, 63-64, 150 N.E.2d 806, 812-13 (and cases cited therein).) In *People v. Keegan* (1971), 52 Ill. 2d 147, 154-56, 286 N.E.2d 345, 348-49, the supreme court discussed this issue and referred to its decision in *People v. Hryciuk* (1954), 5 Ill. 2d 176, 125 N.E.2d 61. In *Hryciuk*, the supreme court stated that basing the determination solely upon the statements of the jurors ignores and evades the real issue and that the determination of that issue must therefore rest in the sound judicial discretion of the court to reach an inference, from all the facts and circumstances, that a fair trial has, or has not, been interfered with. The *Hryciuk* court went on to state that the most controlling fact or circumstance to create such an inference is the character and nature of the prejudicial statements. "Where the question to be decided is of a subjective character, impossible of measured accuracy, each individual case must be determined upon its own peculiar facts and circumstances." 5 Ill. 2d 176, 185, 125 N.E.2d 61, 66.

 The article in question stated the following:

*"Co-Defendant is Cited for Contempt*

For the second consecutive month, a co-defendant has refused to testify against his cousin at his Macon County Circuit Court trial on home invasion charges.

A jury is expected to deliberate today on charges against Ricky L. Talley, 18, of the 500 Block E. Orchard St.

Talley is charged with the home invasion and residential burglary of a 77-year-old man living in the 800 Block W. Olive St. A trial in January ended in a mistrial when a jury learned Talley had a prior criminal record.

The balking witness, Terry L. Smith, 20, of East St. Louis, was returned from state prison to testify against his cousin. Prosecutors earlier had reduced charges against him when he agreed to testify against Talley.

Assistant State's Attorney Jack Ahola indicated that Smith on Monday had said he would be a state witness.

However, when he was called to the witness stand outside the presence of the jury, he refused to testify.

Judge Jerry L. Patton found Smith to be in contempt of court and set his sentencing for Friday.

Talley and Smith, along with Charles Talley, 18, also of the 500 Block E. Orchard St., were arrested by police in connection with a series of home invasions involving several elderly victims.

Police officers testified that they found Ricky Talley's fingerprints on a box inside the victim's residence on Olive Street.

Public Defender Jerry Finney had asked for a mistrial on Tuesday after Ahola used peremptory challenges to excuse two black men from the jury.

Outside the presence of the jury, Finney said Ahola was systematically excusing blacks from the panel, noting he had used only two peremptory challenges and both were against blacks.

Despite a pronouncement several months ago by State's Attorney Jeff Davison that blacks were not to be excused on the basis of their race, Finney contended assistant prosecutors were continuing to do so.

Finney said prosecutors are especially prone to use challenges in cases involving black defendants and white victims.

Ahola said Patton knew of his past record in selecting jurors and that he has often tried cases with blacks on the jury.

He said he used the challenges on Tuesday because he knew one of the men had a conviction for theft and the other had

demonstrated a demeanor that led him to think he would not be a good juror.

Patton denied Finney's motion for a mistrial and an alternative suggestion that the two men be ordered to be seated on the jury."

Although this article raises concern as to possible prejudice caused, the trial judge interrogated the jurors and exercised his discretion in view of the facts and evidence presented at trial. We hold, given the fingerprint evidence in this case and defendant's denial of having been to the victim's home or having touched the boxes on which fingerprints identified as his were found, combined with the circumstances and context of the judge's ruling in the trial, no prejudice is shown here or reasonably intimated and the trial court did not abuse its discretion. See generally *People v. Quinn* (1974), 23 Ill. App. 3d 476, 477, 319 N.E.2d 538, 540; Annot., *Juror's Reading of Newspaper Account of Trial in State Criminal Case During its Progress as Ground for Mistrial, New Trial, or Reversal*, 46 A.L.R. 4th 11 (1986).

■■ Defendant next argues that reversible error occurred when the prosecutor, in closing argument, commented on defendant's failure to call alibi witnesses whose existence was elicited during the State's cross-examination of defendant. Defendant contends that although the prosecutor informed the judge prior to closing arguments that he intended to comment on defendant's failure to call those witnesses, at which time defense counsel objected, the court refused to rule on the subject. At the outset, we note that this matter was raised by defense counsel at the point when the bailiff had been instructed to start bringing jurors down one at a time for questioning on whether they saw the newspaper article quoted above. The following colloquy occurred:

"[Defense Counsel]: Judge, for the record, I don't know if [prosecutor] made a motion or note, but for the record, it's absolutely improper for the State to comment on the failure to call alibi witnesses where the defendant did not inject the alibi witnesses, and they were brought out on the cross examination of the defendant by the State. That's the situation here, and there is ample case authority to that effect.

[Court]: Well, there is no motion before the Court at this time and the Court is not ruling on the aspect.

[Defense Counsel]: That's fine."

The court then began questioning jurors as to whether they had read the article. From our reading of the record, there was no motion then

pending and the matter was not again raised before closing argument. No error.

The State argues that defendant has waived any error with respect to the comment in closing argument by the failure to raise it in his post-trial motion (*People v. Friesland* (1985), 109 Ill. 2d 369, 488 N.E.2d 261; *People v. Pickett* (1973), 54 Ill. 2d 280, 296 N.E.2d 856), and that the error, if any, was harmless in view of the fingerprint evidence.

As we disagree with the merits of defendant's argument, we need not rule on the State's waiver argument. The remarks were objected to as follows:

"[Prosecutor]: No one in the world has those fingerprints but Ricky Talley.

Now, obviously, Ricky Talley says, 'No, I wasn't there.' He doesn't explain how his prints got there, but he says, 'No. I wasn't there.' He said he was out playing cards somewhere in Longview from about 5:30 in the afternoon to 12:30 the next day, and I was with Annette Davis and Gordon Talley, my brother, and Charles Talley and his girlfriend. Where are they?

[Defense Counsel]: Object to that, Your Honor. That places the burden on the defendant to present evidence.

[The Court]: Just a moment. Sustained.

[Defense Counsel]: Ask the jury be instructed to disregard it.

[The Court]: The last statement by counsel shall be disregarded by the jury.

[Defense Counsel]: Move for a mistrial.

[The Court]: Motion denied."

As a general rule, it is improper for the prosecution to comment on a defendant's failure to present witnesses when such witnesses are equally accessible to both parties. (*People v. Munday* (1917), 280 Ill. 32, 117 N.E. 286 (and cases cited therein).) An exception to the rule exists where potential alibi witnesses are interjected into the case by the defendant but are not produced at trial. (*People v. Swift* (1925), 319 Ill. 359, 150 N.E. 263; *People v. Eddington* (1984), 129 Ill. App. 3d 745, 777, 473 N.E.2d 103, 125 (and cases cited therein).) Several decisions have stated that most of the cases in which it was held proper to comment on defendant's failure to call witnesses involved situations where potential witnesses who would support defendant's theory of the case were injected by defendant or a defense witness on *direct examination.* (*People v. Mays* (1972), 3 Ill. App. 3d 512, 516, 277 N.E.2d 547, 549; *People v. Olejniczak* (1979), 73 Ill. App. 3d 112,

123, 390 N.E.2d 1339, 1346.) In *Eddington*, this court held that the exception was inapplicable when the existence of potential witnesses was interjected into the case through the State's witnesses. *People v. Eddington* (1984), 129 Ill. App. 3d 745, 777, 473 N.E.2d 103, 125.

The issue raised in this case is whether the prosecutor may comment on defendant's failure to call alibi witnesses whose identities were injected into the case by the defendant during cross-examination. The third district and the first district have held that when the names of potential witnesses are elicited from defendant on cross-examination the responsibility for failure of the defendant to produce such witnesses cannot be assessed against the defendant or have the same significance as when the defendant himself refers to such potential witnesses in an apparent attempt to bolster his defense. (*People v. Mays* (1972), 3 Ill. App. 3d 521, 277 N.E.2d 547; *People v. Olejniczak* (1979), 73 Ill. App. 3d 112, 390 N.E.2d 1339.) However, the court in *Mays* cited with approval the following language from *People v. Gray* (1964), 52 Ill. App. 2d 177, 190, 201 N.E.2d 756, 763, *rev'd on other grounds* (1965), 33 Ill. 2d 160, 210 N.E.2d 486:

> " 'Where the defendant injects into the case his activities with potential witnesses during a particular period of time ostensibly for the purpose of establishing an alibi for the time of the commission of the crime charged, his failure to produce such witnesses is a proper subject of comment on the part of the State.' "

*Cf. People v. Taylor* (1985), 137 Ill. App. 3d 148, 154, 484 N.E.2d 383, 387 (proper for State to comment on defendant's failure to call his stepchildren as witnesses—they could not be considered equally available to the prosecution and they could either support defendant's alibi or explain why they could not establish defendant's presence at a certain location on dates in question).

▪ When a defendant elects to take the stand in his own behalf, and gives such limited testimony on direct examination—as in this case—that the assertion of an alibi, as well as the names of potential alibi witnesses, are raised first on cross-examination, he is not automatically insulated from the inferences which naturally flow from the failure of the defendant to present any of the five witnesses he said he was with at the time of the offense. This court's holding in *Eddington* cannot be construed as requiring a different result.

▪ Moreover, even if it were found improper for the prosecutor to comment on defendant's failure to produce alibi witnesses first asserted by the defendant in response to cross-examination by the State, in the circumstances of this case such comment must be

deemed harmless error. Defendant's assertion of an alibi in cross-examination by the State, as well as his denial of going to the victim's house or handling the boxes on which defendant's fingerprints were identified, must be viewed as against the identification evidence of defendant's fingerprints at the scene of the offense.

■■■ Finally, defendant argues that the State failed to articulate a neutral explanation for removal of all of the black veniremen under *Batson v. Kentucky* (1986), 476 U.S. 79, 90 L. Ed. 2d 69, 106 S. Ct. 1712, and that this amounted to reversible error. The ruling in *Batson* applies retroactively to State and Federal cases pending on direct review or not yet final when that decision was filed. (*Griffith v. Kentucky* (1987), 479 U.S. ___, 93 L. Ed. 2d 649, 107 S. Ct. 708.) *Batson* set forth the general framework for its application:

> "[A] defendant may establish a prima facie case of purposeful discrimination in selection of the petit jury solely on evidence concerning the prosecutor's exercise of peremptory challenges at the defendant's trial. To establish such a case, the defendant first must show that he is a member of a cognizable racial group [citation] and that the prosecutor has exercised peremptory challenges to remove from the venire members of the defendant's race. Second, the defendant is entitled to rely on the fact, as to which there can be no dispute, that peremptory challenges constitute a jury selection practice that permits 'those to discriminate who are of a mind to discriminate.' [Citation.] Finally, the defendant must show that these facts and any other relevant circumstances raise an inference that the prosecutor used that practice to exclude the veniremen from the petit jury on account of their race. This combination of factors in the empanelling of the petit jury, as in the selection of the venire, raises the necessary inference of purposeful discrimination.
>
> In deciding whether the defendant has made the requisite showing, the trial court should consider all relevant circumstances. For example, a 'pattern' of strikes against black jurors included in the particular venire might give rise to an inference of discrimination. Similarly, the prosecutor's questions and statements during voir dire examination and in exercising his challenges may support or refute an inference of discriminatory purpose. *** We have confidence that trial judges, experienced in supervising voir dire, will be able to decide if the circumstances concerning the prosecutor's use of peremptory challenges creates a prima facie case of discrimination against

black jurors.

Once the defendant makes a prima facie showing, the burden shifts to the State to come forward with a neutral explanation for challenging black jurors. Though this requirement imposes a limitation in some cases on the full peremptory character of the historic challenge, we emphasize that *the prosecutor's explanation need not rise to the level justifying exercise of a challenge for cause*. See *McCray v. Abrams*, 750 F.2d, at 1132; *Booker v. Jabe*, 775 F.2d 762, 773 (CA6 1985), cert pending 85—1028. But the prosecutor may not rebut the defendant's prima facie case of discrimination by stating merely that he challenged jurors of the defendant's race on the assumption--or his intuitive judgment--that they would be partial to the defendant because of their shared race. \*\*\* Nor may the prosecutor rebut the defendant's case merely by denying that he had a discriminatory motive or 'affirming his good faith in individual selections.' \*\*\* The prosecutor therefore must articulate a neutral explanation related to the particular case to be tried. The trial court then will have the duty to determine if the defendant has established purposeful discrimination." (Emphasis added.) (476 U.S. 79, ____, 90 L. Ed. 2d 69, 87-89, 106 S. Ct. 1712, 1722-24.)

The majority in *Batson* stated that the prosecutor must give a clear and reasonably specific explanation for his legitimate reasons for exercising the challenges. The majority further noted its holding in a recent Title VII sex discrimination case that a finding of intentional discrimination is a finding of fact entitled to appropriate deference by a reviewing court, and stated: "Since the trial judge's findings in the context under consideration here largely will turn on evaluation of credibility, a reviewing court ordinarily should give those findings great deference." 476 U.S. 79, ____ nn.20 & 21, 90 L. Ed. 2d 69, 88-89 nn.20 & 21, 106 S. Ct. 1712, 1723-24 nn.20 & 21.

In this case, the *voir dire* examination was conducted and reported, but not transcribed by the court reporter, and is not part of the record on appeal. The record shows that, outside the presence of the jury, the defendant moved for a mistrial or, in the alternative, for the seating as jurors of two blacks as to whom the State had exercised peremptory challenges. Defense counsel argued it had been a policy of the county State's Attorney's office to exclude black jurors from cases, particularly involving a black defendant and a white victim. Defense counsel went on to argue: "Now, as far as I can tell, there are only two black persons that have been in our panel to be selected for jurors. Both of them have been called and the State's

used its only two peremptories to exclude those two witnesses."

In response, the prosecutor explained his exercise of peremptory challenge as to one juror on the basis that he had a theft conviction, according to the prosecutor's records, and was the only person up to that point that had a theft conviction. As to the other peremptory challenge exercised, the prosecutor stated that he "was not too happy with [the person's] demeanor and how he answered the questions." The court denied the motion of the defendant.

Assessing these facts by the standards set forth in *Batson*, we conclude that no error was committed. The prosecutor did not rest the exercise of his peremptory challenges on an assumption that the black members of the venire would be partial to the defendant because of their shared race. From the record before us, we cannot say that the prosecutor did not give a clear and reasonably specific explanation of legitimate reasons for exercising the challenges. As clearly set forth in *Batson*, the prosecutor's explanation need *not* rise to the level of justifying exercise of a challenge for cause. Upon reading of the entire record and arguments and in view of the deference to be accorded to the trial judge's finding in such matters, we reject defendant's argument.

Affirmed.

GREEN and McCULLOUGH, JJ., concur.