THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
ERSKIN MELCHOR, Defendant-Appellant.

First District (2nd Division)   No. 1—87—1003

Opinion filed March 7, 1989.

John L. Gubbins, of John L. Gubbins & Associates, Ltd., of Chicago, for appellant.

Richard M. Daley, State's Attorney, of Chicago (Inge Fryklund, Linda Woloshin, and Paul Gliatta, Assistant State's Attorneys, of counsel), for the People.

JUSTICE BILANDIC delivered the opinion of the court:

Defendant, Erskin Melchor, a former Chicago police officer, was charged with two counts of delivery of a controlled substance. After a jury trial, defendant was found guilty and sentenced to 10 years in the Illinois Department of Corrections.

Defendant was previously tried and convicted of the same offense. That conviction was reversed and remanded for a new trial because of improper use of an unauthenticated transcript of a tape recording. (*People v. Melchor* (1985), 136 Ill. App. 3d 708, 483 N.E.2d 971.) At the new trial, the prosecution corrected its previous errors and successfully introduced a series of recordings incriminating the defendant.

On appeal, the defendant does not complain about this particular evidence or the sufficiency of the evidence of guilt. However, defendant seeks a new trial on the grounds that the trial court denied him a fair trial by refusing to give the jury an "informer" instruction tendered by defense counsel and, in the alternative, a remand for a hearing pursuant to *Batson v. Kentucky* (1986), 476 U.S. 79, 90 L. Ed. 2d 69, 106 S. Ct. 1712, to determine if the prosecution used its peremptory challenges in a discriminatory manner.

During the jury selection, the State excused a total of eight jurors. Defendant objected to the State's exclusions, noting that six of the potential jurors were black. The court made inquiries of the State regarding each of the six complained-of exclusions. The State related specific reasons which did not involve race and called the court's attention to the fact that four of the jurors accepted and one alternate were black. The State also exercised a peremptory challenge to excuse a potential alternate juror who was white. The court overruled defendant's objection and the case proceeded to trial.

At trial, the evidence established that Gregory Grant made three controlled purchases of cocaine from the defendant while both were members of the Chicago police department. On April 16, 1982, a

search warrant was executed at Grant's apartment, where cocaine, marijuana, and $15,000 in cash were confiscated. Later that day, Grant met with a representative of the State's Attorney and officials of the Internal Affairs Division (IAD) of the Chicago police department. Grant agreed to cooperate with the authorities in their undercover investigations. The agreement included a guilty plea from Grant in June 1982, for selling cocaine, and a term of five years' probation in exchange for his truthful testimony in the numerous cases he had helped investigate regarding police officers selling cocaine. Grant continued to work as a police officer from April 16, 1982, until June 1982. He was placed in the Federal Witness Protection Program and given a new identity to insure his safety.

During the investigation, Grant had several conversations with defendant. The first conversation took place on April 20, 1982. Grant placed the phone call to defendant's telephone number from the State's Attorney's office. Sergeant Thomas Chandler, a Chicago police officer, was listening on an extension telephone. Grant then was given $500 and drove to defendant's apartment, where he bought one-eighth ounce of cocaine for $300. Grant then delivered the purchased cocaine and cash balance to the investigators.

The next phone call was placed to defendant's residence on April 22, 1982, from a pay phone near the Museum of Science and Industry. Pursuant to authorization, Grant was fitted with a tape recorder and transmitter. He was given $400. Grant then drove to defendant's apartment, where he purchased a bag of cocaine for $275. He delivered the bag of cocaine and the unused portion of the cash to the investigators.

On May 3, 1982, Grant again placed a call to defendant from the Museum of Science and Industry. He was equipped with a recorder and transmitter, and provided with $4,000. Grant drove to defendant's residence, where he purchased 31½ grams of cocaine for $2,950. He delivered the cocaine and the remaining cash to the investigators.

It is not necessary to recite the detailed mechanics of the recording, authentication, transcription and introduction in evidence of the specific unlawful acts with which the defendant was charged. The State complied with all of the legal requirements for the introduction of this incriminating evidence. The defendant does not assign any error in this regard.

The only witness for the defense was defendant's sister, Rosa Melchor. She testified that she did not recognize her brother's voice on any of the tapes submitted by the State.

After all the evidence was heard, a jury instruction conference

was held. Defendant tendered a non-Illinois Pattern Jury Instructions (IPI) instruction dealing with the testimony of an informer. The instruction was directed at the testimony of Grant. The court sustained the State's objection.

The jury found defendant guilty. He was sentenced to 10 years' imprisonment. Defendant appeals.

## I

Defendant contends that the refusal to give his non-IPI instruction is reversible error that requires a new trial.

The jury was instructed concerning the credibility of the witnesses with IPI Criminal 2d No. 1.02, which provides:

"You are the sole judges of the believability of the witnesses and of the weight to be given to the testimony of each of them. In considering the testimony of any witness, you may take into account his ability and opportunity to observe, his memory, his manner while testifying, any interest, bias, or prejudice he may have, and the reasonableness of his testimony considered in the light of all the evidence in the case.

You should judge the testimony of the defendant in the same manner as you judge the testimony of any other witness." (IPI Criminal 2d No. 1.02.)

The defense tendered the following instruction from the Federal Jury Practice and Instructions, Devitt and Blackmar:

"The testimony of an informer who provides evidence against a defendant for pay, or for immunity from punishment, or for personal advantage or vindication, must be examined and weighed by the jury with greater care than the testimony of an ordinary witness. The jury must determine whether the informer's testimony has been affected by interest, or by prejudice against the defendant." (1 E. Devitt & C. Blackmar, Federal Jury Practice & Instructions §17.02 (3d ed. 1977).)

The trial court refused this non-IPI instruction on the ground that IPI Criminal 2d No. 1.02 adequately instructed the jury as to the credibility of all the witnesses.

■■ ■ Whenever a party tenders an instruction which is not found in IPI Criminal, the trial court has discretion to determine whether the instruction should be given. (107 Ill. 2d R. 451(a); *People v. Moore* (1980), 89 Ill. App. 3d 202, 209, 411 N.E.2d 579.) A non-IPI instruction must be simple, accurate, and properly advise the jury of an applicable principle of law. (*People v. Carini* (1986), 151 Ill. App. 3d 264, 502 N.E.2d 1207, *appeal denied* (1987), 114 Ill. 2d 548.) Fail-

ure to give an appropriate instruction requires reversal only where the defendant was so prejudiced by the failure to give the instruction as to affect the outcome of the verdict. *People v. Bertucci* (1980), 81 Ill. App. 3d 851, 401 N.E.2d 1123.

Grant was put through a rigorous and exhaustive cross-examination regarding the circumstances which led to his agreement to cooperate with the authorities to obtain evidence of criminal narcotics activities of the defendant and other officers of the Chicago police department. All of the details of his arrest, conviction, lenient sentence and placement with the Federal Witness Protection Program were ventilated before the jury. Argument to the jury called attention to his personal bias, interest, motives and prejudice. His credibility was not left to chance.

■ The given IPI instruction was sufficient. There was no need for the tendered non-IPI instruction. It is not based on the evidence because Grant did not receive *immunity*. He was indicted, convicted and sentenced to probation. Even if the tendered instruction was appropriate, the error would be harmless and would not warrant a new trial. The evidence of guilt is overwhelming and the tendered instruction could not erase the actual recording and transcription of the crimes. The trial court correctly denied defendant's tendered instruction.

## II

Defendant argues in the alternative that this matter should be remanded for an evidentiary hearing relative to the State's use of its peremptory challenges.

■ In *Batson v. Kentucky* (1986), 476 U.S. 79, 90 L. Ed. 2d 69, 106 S. Ct. 1712, the United States Supreme Court reiterated that the equal protection clause forbids a prosecutor from peremptorily challenging potential jurors solely on account of race or on the assumption that black jurors as a group will be unable to impartially consider the prosecutor's case against a black defendant. (*Batson*, 476 U.S. at 89, 90 L. Ed. 2d at 83, 106 S. Ct. at 1719.) Defendant's recourse under *Batson* requires that he first establish a *prima facie* case of discrimination. Once the defendant establishes a *prima facie* case, the burden shifts to the prosecution to come forward with race-neutral explanations for striking the black veniremen. The prosecutor must give a clear and reasonably specific explanation for his legitimate reasons for exercising the challenges. (*Batson*, 476 U.S. 79, 90 L. Ed. 2d 69, 106 S. Ct. 1712.) As the trial court's finding largely will turn on an evaluation of credibility, a reviewing court should give such findings

great deference. *Batson,* 476 U.S. at 98 nn.20-21, 90 L. Ed. 2d at 88-89 nn.20-21, 106 S. Ct. at 1723-24 nn.20-21.

■ In the instant case, we need not decide whether defendant has established a *prima facie* case of purposeful discrimination because, in our determination, the record supports the finding that the reasons given for excusing the six jurors were race neutral and case specific.

When challenged by defendant, the prosecutor stated that the youth and lack of sophistication to appreciate the seriousness of the crime was a reason for excusing three of the six jurors. These three jurors were a 21-year-old woman who worked as a cashier for one year, a student of 22 who apparently had never been employed, and a 21-year-old clerk. Another juror was excused because he lived in an area inundated with drugs and, therefore, the State felt he may not appreciate the seriousness of the offense. The fifth excused juror had been shot by a police officer and the State believed that this experience may have affected the prospective juror's ability to be fair and impartial because the prosecution was based on the testimony of police officers. The final juror was excused because she had a relative and a close friend who were police officers. The prosecutor believed that her ability to be impartial may be affected. Each of the excused jurors was engaged in nonprofessional occupations or was an unemployed nonprofessional. The jury which was selected to try this case consisted of persons engaged in professional careers or older persons with grown children.

The Supreme Court has not attempted to define what is a "neutral explanation" for the exercise of a peremptory challenge. However, the following have been deemed racially neutral. In *People v. Talley* (1987), 152 Ill. App. 3d 971, 987, 504 N.E.2d 1318, "not too happy with [the person's] demeanor and how he answered the question" was a neutral explanation. In *People v. Daniels* (1987), 164 Ill. App. 3d 138, 517 N.E.2d 626, *appeal denied* (1988), 119 Ill. 2d 562, the State excused a black venireman because he agreed out loud that everyone has a right to defend himself. In *United States v. Clemons* (3d Cir. 1988), 843 F.2d 741, it was held racially neutral and case specific to exclude young, single panel members for drug-related offenses. In *People v. Taylor* (1988), 171 Ill. App. 3d 261, 524 N.E.2d 1216, *appeal denied* (1988), 122 Ill. 2d 590, the court stated that the State could reasonably believe that young, single unemployed persons lack maturity and may have a tendency to identify with defendants charged with drug offenses.

Giving "great deference" to the trial court's finding, we conclude

that the prosecutor's reasons for the exclusions were proper in light of the narcotics charge involved in this case.

The judgment of the circuit court of Cook County is affirmed.

Affirmed.

EGAN, P.J., and HARTMAN, J., concur.