THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. ANTHONY MURFF, Defendant-Appellant.

First District (2nd Division)   No. 1—88—2563

Opinion filed June 11, 1991.

1036

Randolph N. Stone, Public Defender, of Chicago (Millicent Willis, Assistant Public Defender, of counsel), for appellant.

John O'Malley, State's Attorney, of Chicago (Renee Goldfarb, Gael O'Brien, and Veronica Calderon, Assistant State's Attorneys, of counsel), for the People.

JUSTICE HARTMAN delivered the opinion of the court:

Defendant appeals his jury conviction of aggravated criminal sexual assault (Ill. Rev. Stat. 1987, ch. 38, par. 12–14), raising as issues whether (1) the State used its peremptory challenges to systematically exclude jurors based on race, (2) the circuit court improperly admitted prejudicial evidence, and (3) defendant was proved guilty beyond a reasonable doubt. We affirm, for reasons which follow.

At trial, I.A. testified that at around 11 p.m. on August 10, 1987, while walking home alone, she saw defendant, whom she had known for several years. Defendant offered to share his bottle of wine, but I.A. declined. After talking for a short time, defendant grabbed I.A. by the arm and dragged her 20 to 25 feet into an apartment building on south State Street. He took her to a back hallway on the first floor, where they struggled on the ground. Defendant managed to pull I.A.'s pants down, and he struck her face several times. He lowered his own trousers and inserted his penis into her vagina. Defendant also placed his penis in I.A.'s mouth. Afterwards, he apologized and asked I.A. not to tell anyone what had happened.

I.A. ran to her apartment and telephoned her sister, D.A. She also called the police, but did not speak to an officer that night. She was very distraught and cried herself to sleep. D.A. arrived the next morning and summoned the police again. When an officer arrived, I.A. reported defendant's name and physical description and showed the officer where the incident had occurred. She then went to the hospital for treatment of her injuries. On cross-examination, I.A. denied that she had been drinking before the incident.

D.A. testified that she received a call from I.A. after 11 p.m. on August 10, 1987. I.A. was crying, her speech was slurred, and she said that defendant had raped her. D.A. went to I.A.'s apartment the next morning where she called the police. I.A. was crying and had slept in her clothes, which were visibly dirty.

Chicago police officer Anthony Mickel went to I.A.'s apartment on the morning of August 11, 1987. I.A. had a bruise on her forehead, was noticeably upset, and wore dirty clothes. She described the incident and showed Mickel where it had occurred. She also gave him defendant's telephone number.

Samples of I.A.'s saliva and vaginal fluid were taken at the hospital after the incident. Further, blood and saliva samples were taken from both I.A. and defendant prior to trial. Pamela Fish, a serologist in the police department crime lab, testified that she analyzed the

samples and found spermatozoa in the vaginal smear taken from I.A. following the incident, but not in the oral smear. Fish also conducted tests to determine the blood type of the bodily fluids on the vaginal swab. Based on her analysis, she concluded that defendant was in the group of people that could have deposited semen in I.A. On cross-examination, however, Fish admitted that 25% of the population has blood with similar characteristics and could also be included in this group.

The State rested, and defendant's motion for a directed verdict was denied.

Defendant testified in his own defense. He stated that he saw I.A. on the night of the incident with several people. He talked to her for almost an hour, and they shared a bottle of wine. When two men approached with more wine and began talking to I.A., defendant left and eventually went home. He denied ever having placed his penis in I.A.'s mouth or vagina and said he did not assault her.

The jury found defendant guilty of both counts of aggravated criminal sexual assault. (Ill. Rev. Stat. 1987, ch. 38, par. 12—14.) The court sentenced defendant to 15 years in the custody of the Department of Corrections.

I

Defendant, who is black, first alleges that he should have been granted a mistrial because the State used its peremptory challenges to exclude black jurors in violation of *Batson v. Kentucky* (1986), 476 U.S. 79, 90 L. Ed. 2d 69, 106 S. Ct. 1712.

During *voir dire*, the State peremptorily challenged a total of three prospective jurors, all of whom were black. After the jury was sworn, defense counsel moved for a mistrial claiming that the State had systematically excluded blacks from the jury. Before determining whether defendant had made out a *prima facie* case of purposeful discrimination, the court invited explanation from the State as to the bases for its peremptory challenges. At no time prior to its ruling on the motion did the court determine whether defendant had established a *prima facie* case.

■ *Batson* requires that defendant make a *prima facie* case of discrimination by relying on the fact that peremptory challenges facilitate discrimination and by showing that (1) defendant belongs to a cognizable racial group, (2) the State peremptorily challenged venire members who belonged to that group, and (3) these facts "and any other relevant circumstances raise an inference" of purposeful racial discrimination. (*Batson*, 476 U.S. at 93-96, 90 L. Ed. 2d at 85-88, 106

S. Ct. at 1721-23.) As a general rule, however, the mere number of blacks peremptorily challenged, without more, will not establish a *prima facie* case. *People v. Mahaffey* (1989), 128 Ill. 2d 388, 413-14, 539 N.E.2d 1172.

■ Our supreme court has cautioned against collapsing what ought to be a methodical *Batson* hearing into an undifferentiated review of defense and State contentions as was done in the present case. (See *People v. Hope* (1990), 137 Ill. 2d 430, 456-57, 560 N.E.2d 849.) The State is not allowed to interrupt the *prima facie* hearing stage by tendering reasons for its peremptory challenges, as those reasons "would constitute a thumb on the scales that weigh the *prima facie* submission, which would undermine the very concept of a *prima facie* case as outlined in *Batson*." (*People v. Garrett* (1990), 139 Ill. 2d 189, 201, 564 N.E.2d 784.) Further, the circuit court's invitation for State explanations does not create a presumption that defendant had established a *prima facie* case. *Garrett*, 139 Ill. 2d at 201-02.

In *Garrett*, which is similar to the case *sub judice*, defense counsel moved to dismiss the jury on the ground that the State had used five of its six peremptory challenges to exclude blacks, but did not cite any other circumstances that arguably might have supported a *prima facie* case of racial discrimination. The circuit court held a "consolidated hearing" at which it considered the State's explanations and defendant's own justifications for striking venire members, but never expressly found whether defendant had established a *prima facie* case. Defendant's motion to strike the jury was denied. The supreme court held that in evaluating a *prima facie* submission, the State's explanations of its peremptory challenges were irrelevant, as were defendant's explanations of his own challenges to black venire members. All that remained, therefore, was a list of black venire members challenged by the State, and that submission was insufficient for the circuit court reasonably to find that a *prima facie* case had been established. *Garrett*, 139 Ill. 2d at 203-04.

Similarly, a consolidated hearing was held in this case at which the State proffered explanations for its challenges before the court determined whether a *prima facie* case had been established. If the State's explanations are disregarded, the only remaining evidence of purposeful discrimination is a brief exchange between defense counsel and the circuit court:

"[DEFENSE COUNSEL]: Judge, we would like at this time to make a motion for mistrial based on the Battson [*sic*] case in

that the State systematically excluded from the jury \*\*\* three prospective jurors, all of whom were black.

\* \* \*

THE COURT: Is there anything further that you wish to articulate that would suggest that this was purposeful discrimination based on race.

[DEFENSE COUNSEL]: Nothing further, Judge."

■■ ■ Defense counsel's submission is insufficient for the circuit court reasonably to find that a *prima facie Batson* case had been established. The mere fact that some black venirepersons are challenged and others are accepted by the State, without more, cannot constitute even a pattern of such challenges. (*Garrett*, 139 Ill. 2d at 204.) Defendant has not offered, nor have we found in our review of the record, any other evidence which reasonably could have implied purposeful racial discrimination. The victim, as well as defendant, is black. Further, the circuit court noted that 3 of the 12 selected jurors were black. See *People v. Fox* (1988), 177 Ill. App. 3d 602, 614-15, 532 N.E.2d 472, *appeal denied* (1989), 125 Ill. 2d 569.

Although we do not approve of the consolidated *Batson* hearing held below, there is no reason to remand this case for any further proceedings. Defendant failed to establish a *prima facie* case when he had a full opportunity to do so.

Assuming, *arguendo*, that defendant could be deemed to have established a *prima facie* case of purposeful discrimination in jury selection, his *Batson* argument still fails. The State provided race-neutral explanations for each of its peremptory challenges.

■■ The State must explain its peremptory challenges in clear, reasonably specific, legitimate, and nonracial terms in order to dispel the presumption created by a *prima facie* case. (*Batson*, 476 U.S. at 98 n.20, 90 L. Ed. 2d at 88 n.20, 106 S. Ct. at 1724 n.20.) It is then incumbent upon the circuit court to make a sincere and reasoned attempt to evaluate the State's explanations. (*Hope*, 137 Ill. 2d at 467.) Accordingly, the court's findings are entitled to great deference and will not be reversed on appeal unless they are against the manifest weight of the evidence. *People v. Harris* (1989), 129 Ill. 2d 123, 175, 544 N.E.2d 357.

■■ ■ Here, the State excluded one prospective juror who failed to disclose that previously he had been charged with aggravated battery. Although it had not allowed the State's challenge for cause on this point, the circuit court properly concluded that there existed a race-neutral basis for his peremptory exclusion from the jury.

Another prospective juror was dismissed because the assistant State's Attorney was dissatisfied with her demeanor. Although explanations which focus upon a venireperson's body language or demeanor must be scrutinized closely (*Harris*, 129 Ill. 2d at 176), such challenges may constitute legitimate and racially neutral reasons for exclusion (*People v. Young* (1989), 128 Ill. 2d 1, 20, 538 N.E.2d 453). The circuit court was in the best position to judge both that person's demeanor and the prosecutor's sincerity. The State's challenge, found to be legitimate, was not against the manifest weight of the evidence.

The last subject prospective juror was challenged because her "body language was such she is a very strong person. *** [T]he way she was positioning herself *** indicated to us that she wouldn't be totally neutral in this case *** [and] she was predisposed against the State." A prospective juror's forceful demeanor and hostility toward the State may constitute a racially neutral basis for exclusion from the jury. (*People v. Taylor* (1988), 171 Ill. App. 3d 261, 267-69, 524 N.E.2d 1216, *appeal denied* (1988), 122 Ill. 2d 590; *People v. Talley* (1987), 152 Ill. App. 3d 971, 987, 504 N.E.2d 1318.) The court's acceptance of the State's explanation as sufficiently race-neutral was not error.

Defendant's motion for a mistrial was properly denied. The circuit court's finding of no *Batson* violation was not against the manifest weight of the evidence.

## II

Defendant next challenges the testimony of serologist Pamela Fish as irrelevant and prejudicial. Based upon her analysis of the bodily fluids found on I.A.'s vaginal swab and the blood and saliva samples of both I.A. and defendant, Fish concluded that defendant was within the group of people who could have deposited semen in I.A.'s vagina.

Evidence is relevant where it fairly tends to prove the particular offense charged. (*People v. Hall* (1989), 192 Ill. App. 3d 819, 823, 549 N.E.2d 681.) The admission of evidence is within the sound discretion of the circuit court, whose ruling will not be overturned absent an abuse of discretion. *People v. Ward* (1984), 101 Ill. 2d 443, 455-56, 463 N.E.2d 696.

In *People v. Wright* (1989), 186 Ill. App. 3d 159, 542 N.E.2d 367, *appeal denied* (1989), 128 Ill. 2d 671, the reviewing court held that the results of blood group tests were properly admitted where there existed corroborating evidence of defendant's guilt. The test in that case showed that the victim's assailant was part of a group that

comprised 40% to 60% of the black male population, and that defendant was part of that group. The court distinguished *People v. Schulz* (1987), 154 Ill. App. 3d 358, 506 N.E.2d 1343, *appeal denied* (1987), 116 Ill. 2d 572, in which other evidence linking defendant to the crime was relatively weak, and held that "the victim's identification of Wright as her assailant served to define the group of possible assailants (one), and the tests supported the identification by showing that he could not be ruled out." (*Wright*, 186 Ill. App. 3d at 165.) The results of the blood group tests, therefore, were admissible. See also *Hall*, 192 Ill. App. 3d at 824; *People v. Uzelac* (1988), 179 Ill. App. 3d 395, 407-08, 534 N.E.2d 1250, *appeal denied* (1989), 126 Ill. 2d 566.

■ Here, the blood test results were properly admitted. Although the group of possible assailants in this case (25% of the general population) is larger than that found in *Wright* (40% to 60% of the black male population), nevertheless the test results supported I.A.'s previous identification of defendant by showing that he could not be excluded from that group. This corroborative evidence, therefore, is relevant, and the circuit court did not abuse its discretion in admitting it.

### III

Defendant argues that the State failed to prove him guilty beyond a reasonable doubt.

■ An accused is guilty of aggravated criminal sexual assault when he commits an act of sexual penetration by the use or threat of force and causes bodily harm to the victim. (Ill. Rev. Stat. 1987, ch. 38, par. 12—14(a)(2).) When evidence of a criminal conviction is challenged as to its sufficiency, that evidence is viewed in the light most favorable to the State to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. (*Young*, 128 Ill. 2d at 49; *People v. Westfield* (1990), 207 Ill. App. 3d 772, 777, 566 N.E.2d 392.) It is within the province of the jury to determine the credibility of witnesses and the weight given to their testimony. *People v. Collins* (1985), 106 Ill. 2d 237, 261-62, 478 N.E.2d 267.

■ Viewing the evidence in the light most favorable to the State, and cognizant that conflicting testimony is to be resolved by the trier of fact, the State's evidence is not so unsatisfactory as to raise a reasonable doubt of defendant's guilt. I.A. testified that defendant dragged her into a building and forcibly removed her pants while she was on the floor. Defendant put his penis in I.A.'s vagina and mouth, and struck her face several times. There is no issue as to

defendant's identification; I.A. had known him since grade school. The corroborating testimony given by D.A. established that I.A. was distraught immediately following the assault, and she remained upset and disheveled on the next morning. Although the chemical evidence did not specifically identify defendant, it did not rule him out as a possible assailant. Notwithstanding defendant's denial of I.A.'s allegations, a rational trier of fact could have found beyond a reasonable doubt that he committed aggravated criminal sexual assault.

Affirmed.

DiVITO and COCCIA, JJ., concur.