THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
WYDRICK BUFORD, Defendant-Appellant.

First District (3rd Division)   No. 1—88—3512

Opinion filed September 16, 1992.

Rita A. Fry, Public Defender, of Chicago (Michael Davidson and Vicki Rogers, Assistant Public Defenders, of counsel), for appellant.

Jack O'Malley, State's Attorney, of Chicago (Renee Goldfarb, David Stabrawa, and Carrie Weiner, Assistant State's Attorneys, of counsel), for the People.

PRESIDING JUSTICE GREIMAN delivered the opinion of the court:

Following a jury trial, defendant Wydrick Buford was convicted of murder, attempted murder, and aggravated battery. The trial court

sentenced defendant to prison terms of 30 years, 15 years and 5 years, respectively, for each crime, to be served concurrently.

On appeal, defendant raises seven issues as to whether: (1) the peremptory challenges by the prosecutor constitute a *Batson* violation; (2) defendant was denied a fair trial due to the allegedly improper and prejudicial interjection of race issues; (3) defendant was denied a fair trial due to the testimony about the victim's future plans and allowing a photograph of the victim before his death to be taken to the jury room; (4) the absence of a voluntary manslaughter instruction was error; (5) defendant's conviction for aggravated battery should be vacated since it arose out of the same act as his attempted murder conviction; (6) defendant was proven guilty of each charge; and (7) defendant's 30-year sentence is excessive.

For the reasons which follow, we vacate defendant's conviction for aggravated battery and find no error in the trial court's rulings on all other issues.

The shooting incident occurred during an argument over a small bag of marijuana on May 8, 1987. The Straman and Flores families lived next door to each other, and defendant was the boyfriend of one of the Flores' children. On the evening of the incident, several young men were in the Stramans' backyard, including Marty Glines (the murder victim), Wesley Pucek (the attempted murder victim), and other guests.

Sometime during the evening, Steve Straman obtained a small bag (a "dime" bag valued at $10) of marijuana from Ricardo Flores and brought the bag into the backyard inquiring if anyone wished to purchase some marijuana. Steve gave the bag to Marty and Wesley, who had expressed interest in that regard. Later in the evening, in response to Steve's inquiry, Marty and Wesley claimed they no longer had the bag and Steve became upset.

About that time, defendant arrived at the Stramans' house and Steve explained his problem to defendant. Thereafter, in the alley behind the Stramans' backyard, a confrontation occurred among defendant, Marty, Wesley, Ricardo Flores, and other guests. While the argument continued, defendant took a gun from the garage and fired one shot wounding Wesley and then a second shot killing Marty.

The testimony of the several occurrence witnesses essentially recounted the same sequence of events.

During the *voir dire*, the prosecutor peremptorily challenged three black venirewomen and defendant moved for a mistrial, claiming that the prosecutor's actions constituted a *Batson* violation. The trial court denied defendant's motions and found no *Batson* violations.

Following the trial, defendant was convicted of murder, attempted murder and aggravated battery, and was sentenced to 30 years, 15 years and 5 years, respectively, for each conviction to run concurrently.

On appeal, defendant first asserts that the trial court erred in denying his motions for a mistrial based on alleged *Batson* violations during jury selection.

Defendant was the only black person involved in this case. The State exercised peremptory challenges to exclude three black women from the jury—Alice Bush, Bernice Talley and Valerie Lewis.

*Batson* established a three-step analysis to determine whether or not the State used its peremptory challenges to remove venire members on the basis of race. (*Batson v. Kentucky* (1986), 476 U.S. 79, 97, 90 L. Ed. 2d 69, 88, 106 S. Ct. 1712, 1723.) First, the defendant must establish a *prima facie* showing of discrimination. Second, if the defendant made the requisite showing, the State has the burden to come forward with a race-neutral explanation for challenging black jurors. Finally, the trial court then "will have the duty to determine if the defendant has established purposeful discrimination." *Batson*, 476 U.S. at 98, 90 L. Ed. 2d at 88-89, 106 S. Ct. at 1724.

■ The three-step analysis articulated in *Batson* and applied by its progeny establishes a systematic procedure whereby each step is to be considered in order. (*E.g., People v. Andrews* (1989), 132 Ill. 2d 451, 548 N.E.2d 1025 (only if the defendant establishes a *prima facie* case of discrimination does the State rebut the defendant's showing by explaining its contested peremptory challenges).) However, in the present case, a consolidated proceeding, *i.e.*, the simultaneous consideration of the defendant's proffered *prima facie* case and the State's explanations, was employed. Such proceeding, although not improper, hampers our review. (*People v. Valentine* (1991), 221 Ill. App. 3d 1082, 1086-87, 582 N.E.2d 1338 ("[t]his practice of 'collapsing' the *Batson* steps, as well as trial courts' failure to make detailed findings of fact to clarify the record when the *Batson* objection is raised, needlessly adds to the number of costly appeals"); *People v. Murff* (1991), 214 Ill. App. 3d 1034, 1040, 574 N.E.2d 815 ("we do not approve of the consolidated *Batson* hearing held below"); *People v. Jones* (1989), 185 Ill. App. 3d 208, 216, 541 N.E.2d 161 (although the consolidated proceeding was not erroneous, "this is not the recommended procedure as set forth in *Batson*").) At oral argument, the parties agreed that the consolidated procedure is not an issue. See *Hernandez v. New York* (1991), 500 U.S. 352, 359, 114 L. Ed. 2d 395, 405, 111 S.

Ct. 1859, 1866 ("departure from the normal course of proceeding need not concern us").

In *Hernandez*, as in the present case, the prosecutor defended his use of peremptory strikes without any direct inquiry from the trial court so that the trial court had no occasion to rule clearly and specifically on whether or not a *prima facie* showing of intentional discrimination had been made by the defendant. Where the trial court has ruled on the ultimate question of intentional discrimination after a prosecutor has offered a race-neutral explanation, the preliminary issue of whether the defendant had made a *prima facie* showing becomes moot. *Hernandez*, 500 U.S. at 359, 114 L. Ed. 2d at 405, 111 S. Ct. at 1866; *People v. Williams* (1992), 230 Ill. App. 3d 761, 595 N.E.2d 1115; *People v. Hemphill* (1992), 230 Ill. App. 3d 453, 594 N.E.2d 1279; *People v. Finley* (1991), 222 Ill. App. 3d 571, 580, 584 N.E.2d 276.

Our analysis must now address the second step of a *Batson* inquiry, *i.e.*, whether or not the State came forward with race-neutral reasons for excluding the venire members. A neutral explanation "means an explanation based on something other than the race of the juror. At this step of the inquiry, the issue is the facial validity of the prosecutor's explanation. Unless a discriminatory intent is inherent in the prosecutor's explanation, the reason offered will be deemed race neutral." *Hernandez*, 500 U.S. at 360, 114 L. Ed. 2d at 406, 111 S. Ct. at 1866.

The trial court's decision as to whether a *prima facie* case has been rebutted is a factual question grounded in credibility, and thus, it will not be reversed unless it is against the manifest weight of the evidence. (*Williams*, 230 Ill. App. 3d 761, 595 N.E.2d 1115, citing *People v. Harris*, 129 Ill. 2d 123, 544 N.E.2d 357; see also *People v. Hope* (1992), 147 Ill. 2d 315, 589 N.E.2d 503.) This standard of review was explained by the Court in *Hernandez*:

> "In the typical peremptory challenge inquiry, the decisive question will be whether counsel's race-neutral explanation for a peremptory challenge should be believed. There will seldom be much evidence bearing on that issue, and the best evidence often will be the demeanor of the attorney who exercises the challenge. As with the state of mind of a juror, evaluation of the prosecutor's state of mind based on demeanor and credibility lies 'peculiarly within a trial judge's province.' " *Hernandez*, 500 U.S. at 365, 114 L. Ed. 2d at 409, 111 S. Ct. at 1869, quoting *Wainwright v. Witt* (1985), 469 U.S. 412, 428, 83 L. Ed. 2d 841, 854, 105 S. Ct. 844, 854.

Since a single discriminatory act in the selection of a jury is all that is required to demonstrate a violation, we must address each challenged venireperson. *Harris*, 129 Ill. 2d at 175; *People v. Kindelan* (1991), 213 Ill. App. 3d 548, 555, 572 N.E.2d 1138.

█ In the present case, the prosecutor exercised his first contested peremptory challenge to excuse Alice Bush because she gave contradictory statements as to whether or not she could be fair and as to the duties performed by her daughter, who was employed as a computer operator in the juvenile court system. In addition, Ms. Bush said that her discussions with her daughter concerning her daughter's work at juvenile court would impact on her ability to be fair and expressed concern over the nature of the case, *i.e.*, murder.

Defendant contends that other, nonblack venirepersons who were accepted as jurors had comparable traits and, thus, the prosecutor failed to provide an adequate race-neutral reason for the exclusion of Ms. Bush. We disagree.

Defendant first argues that two jurors, Gladys Morgan and Linda Larson, exhibited equal equivocation regarding jury duties as Ms. Bush, but the record does not support that contention. During *voir dire*, Ms. Bush contradicted herself as to her ability to be fair. Neither Ms. Morgan nor Ms. Larson hesitated on her ability to be fair and each woman recognized the seriousness of the proceedings. In addition, other characteristics distinguished the two jurors from Ms. Bush, such as their marital status, their feelings toward handguns, and their employment status. Any perceived similarity in their statements concerning jury duty could legitimately be offset or outweighed by the different traits exhibited between Ms. Bush and the two other jurors. (*People v. Mack* (1989), 128 Ill. 2d 231, 538 N.E.2d 1107.) Moreover, the trial court acknowledged that Ms. Bush's answers regarding her daughter who works at juvenile court as a computer operator could reasonably give the State apprehension.

Defendant next maintains that five jurors (Linda Larson, Gladys Morgan, David May, Lisa Pellegrino, and Al Mikottis) had ties to the court system or matters concerning juveniles comparable to the contacts of Ms. Bush. We disagree.

When twice asked if her daughter's employment or her discussions with her daughter "would have any impact upon [Ms. Bush's] decision in this case, [Ms. Bush's] ability to be fair," Ms. Bush twice replied "yes." In contrast, the five jurors whom defendant compares to Ms. Bush had no secondhand knowledge obtained from a computer operator of the juvenile court system and stated unequivocally that

any perceived link to the court system would not impair his or her ability to be fair in the present case.

Ms. Larson was employed by the Illinois State Psychiatric Institute (ISPI) and was responsible for providing recreational activities for adults. When asked if the ISPI is affiliated with the court, Ms. Larson answered "I don't know."

Ms. Morgan was employed as an investigator by the Department of Children and Family Services. Her duties were to visit homes to investigate complaints against a child caretaker, *i.e.*, any person responsible for the care of a child.

Mr. May was employed as a guidance counsellor at a high school.

Ms. Pellegrino worked as a bartender. One of her friends was employed by the City of Chicago in its Department of Revenue and was responsible for licensing violations, not street crimes.

Mr. Mikottis, a structural engineer, had a friend who worked as a police officer in the Chicago suburb of Oak Brook.

Based on our review of the record, we conclude that defendant's attempt to equate or compare the traits of some accepted jurors with Ms. Bush is, at best, tenuous and inconclusive.

The second peremptory challenge by the prosecutor excused Bernice Talley on the grounds that she had acted inappropriately when she "interrupted the questioning by the Judge and started to take a piece of candy at that time." The interruption, the State maintains, was unwarranted and demonstrated that Ms. Talley was inattentive.

Defendant argues that the trial judge's clarification of the circumstances undercuts any possible credibility in the State's proffered explanation for the exclusion of Ms. Talley.

The trial judge, in accepting the prosecutor's reason as race neutral, stated as follows:

> "[T]hough I did not find it objectionable in that the lady [Ms. Talley] was coughing and needed to receive some mint or cough drop which I told her to certainly do, that was not any disrespect to the Court. The fact the State might attach some significance to that is within their prerogative. But simply based upon the nature of the selection process and use of peremptory challenges at this point I do not feel the State is excluding persons based upon the race."

The exercise of a peremptory challenge on the basis of an individual's courtroom conduct or demeanor has been repeatedly approved by courts. (*Mack*, 128 Ill. 2d at 240 (and cases cited therein); *Kindelan*, 213 Ill. App. 3d at 557 (and cases cited therein).) A peremptory challenge was held legitimate where the prosecutor stated that he

"was not too happy with [the person's] demeanor and how he answered the questions." (*People v. Talley* (1987), 152 Ill. App. 3d 971, 987, 504 N.E.2d 1318.) A venireperson who is inattentive may be peremptorily excused by the prosecutor. *People v. Taylor* (1988), 171 Ill. App. 3d 261, 269, 524 N.E.2d 1216.

As a reviewing court, we examine a cold record which may convey the conduct of Ms. Talley as unremarkable or inconsequential. However, the record includes a clear statement by the trial judge that, although he did not view Ms. Talley's conduct as disrespectful, he believed the State was not "excluding persons based upon race."

The deference accorded a trial judge's determination is founded on the premise that he, unlike a reviewing court, has the opportunity to observe personally the demeanor of the prospective juror and to evaluate subjectively the sincerity of the prosecutor. *Murff*, 214 Ill. App. 3d at 1041 (the trial court "was in the best position to judge both that person's demeanor and the prosecutor's sincerity"); see also *Kindelan*, 213 Ill. App. 3d at 557; *People v. Baisten* (1990), 203 Ill. App. 3d 64, 560 N.E.2d 1060.

■ Given the acceptance of courtroom conduct as a legitimate basis for a peremptory challenge and the mandate for deferential review in these circumstances, we cannot say that the trial court's finding was manifestly erroneous. See *Taylor*, 171 Ill. App. 3d at 269.

The third venirewoman to be excused by the prosecutor was Valerie Lewis, because she was unemployed, single, and had a three-month-old baby. The State asserts that the combination of these three factors indicates that Ms. Lewis was preoccupied and unreliable while defendant contends that the State did not challenge other potential jurors with similar traits.

■ The record refutes defendant's contention and reveals that no juror had a combination of these traits. Instead, each selected juror was employed with the exception of the second alternate who, unlike Ms. Lewis, was retired and had no children. Moreover, the State had previously excused a white venireman who, like Ms. Lewis, was unemployed and single.

Although we might question the relevancy of employment status, concern over such status of prospective jurors is legitimate and race neutral. *Mack*, 128 Ill. 2d at 241 (unemployment or unstable job history); *Hemphill*, 230 Ill. App. 3d 453, 594 N.E.2d 1279 (unemployment); *People v. Melchor* (1989), 180 Ill. App. 3d 372, 377, 535 N.E.2d 1082 (unemployment or employment in nonprofessional occupations).

In addition, the marital status of a prospective juror could be found a racially neutral reason. *People v. Knott* (1991), 224 Ill. App.

3d 236, 250-51, 586 N.E.2d 479, citing *United States v. Cartlidge* (5th Cir. 1987), 808 F.2d 1064, 1070-71 (reasonable explanation includes prospective juror's status as single or divorced, in favor of married person).

We find that the reasons proffered by the State for its removal of Ms. Lewis were sufficiently race neutral.

Defendant next asserts that two questions posed by the State during the cross-examination of defense witness Lionel Jean Baptiste improperly interjected issues of racial hostility and thus he was denied his right to a fair trial. Defendant concedes that he did not raise this issue in his post-trial motion but contends that the plain error doctrine should be applied.

The witness, while working as a law clerk for the public defender's office, had accompanied defense counsel to interview Pucek, the attempted murder victim. During cross-examination, the State asked the witness if the public defender had told him prior to the interview that the case involved a "racial thing between some white kids and the defendant [who] was black." Following defendant's objection which was overruled by the trial court, the witness denied the State's account of his conversation with the public defender.

■ It is well established that to preserve an issue for review, both a trial objection and a written post-trial motion raising the alleged error are required. (*People v. Enoch* (1988), 122 Ill. 2d 176, 186, 522 N.E.2d 1124.) As admitted by defendant, he failed to raise this issue in his post-trial motion. Accordingly, we find that this issue has been waived.

Review of an issue which has been waived through procedural default "is limited to plain errors or defects in substantial rights which deprive the accused of a substantial means of enjoying a fair and impartial trial or which occur in cases in which the evidence is closely balanced." (*People v. Odle* (1988), 128 Ill. 2d 111, 134, 538 N.E.2d 428.) Neither element of the plain error exception to the waiver rule appears in the present case. Even assuming that the prosecutor's questions injected irrelevant issues of racial tension, the answers by Baptiste clearly dispelled such notion.

In the third issue raised on appeal, defendant contends that he was denied a fair trial based on a reference to the decedent's future career plans and allowing a photograph of the decedent to be brought into the jury room. We disagree.

· During the State's direct examination of the murder victim's older brother, the following exchange took place:

"Q. Do you know if Marty had any plans for the future after a summer of lifeguarding?

[Defense counsel]: Objection, Judge.

THE COURT: Sustained.

A. All right, this was to be his last year.

THE COURT: When there is an objection and I sustain the objection, you cannot answer that question."

Later, the jury also received a curative instruction which stated in part "[y]ou should disregard questions and exhibits which were withdrawn or to which objections were sustained." Illinois Pattern Jury Instructions, Criminal, No. 1.01 (2d ed. 1981).

■ We do not believe any prejudice flowed from this exchange. The revelation that there is life after lifeguarding for a 20-year-old young man like decedent could hardly be deemed shocking or inflammatory. Moreover, any potential prejudice is generally cured where there is a prompt objection, sustaining of the objection, and an instruction to disregard the testimony. *People v. Bartall* (1983), 98 Ill. 2d 294, 317, 456 N.E.2d 59; *People v. Brooks* (1988), 172 Ill. App. 3d 417, 422, 526 N.E.2d 420.

Similarly we do not believe the decedent's photograph unfairly aroused the sympathies of the jury when the trial court allowed it to go to the jury during deliberations. The photograph of decedent was taken about one year before his death and is a posed portrait showing his face and chest. Defendant specifically stated that he had no objection to admitting the photograph into evidence but did not think it should go into the jury room.

In his ruling, the trial judge reasoned:

"There had been some discussion about the size of the individuals involved in this altercation, and the photograph will aid the jury in determining if the size of the victim is correct, to make whatever conclusions they wish in regards to that."

Whether or not an exhibit should be admitted into the jury room is primarily within the discretion of the trial court. (*Bartall*, 98 Ill. 2d at 318.) Given the circumstances of this case, we cannot say that the trial court abused its discretion in allowing an exhibit which was admitted into evidence without objection to go into the jury room.

Defendant next asserts that he was denied a fair trial because a voluntary manslaughter instruction was not given *sua sponte* by the trial court. We find defendant's argument meritless.

The record reveals that defendant never requested a voluntary manslaughter instruction and also declined the trial court's specific in-

vitation to request such an instruction. The following exchange appears in the record:

"THE COURT: All right. The record should further reflect that the Court inquired of defense, even gave them an opportunity to confer with their client with regards to the giving of the voluntary manslaughter instructions, and it was the defendant's position that they did not wish those instructions to go to the jury; is that correct?

\* \* \*

[DEFENSE COUNSEL]: Judge, for the record, we discussed this issue about the voluntary instruction, giving or not giving the voluntary manslaughter instruction. He [defendant] agrees with our decision, Judge.

THE COURT: That it should not be given?

[DEFENSE COUNSEL]: Yes."

■ The parties bear the burden of preparing and tendering proper jury instructions. (*People v. Smith* (1978), 71 Ill. 2d 95, 104, 374 N.E.2d 472; *People v. Garcia* (1988), 169 Ill. App. 3d 618, 621, 523 N.E.2d 992.) Generally a party may not raise on appeal the failure to give an instruction unless it is one that he tendered (*Garcia*, 169 Ill. App. 3d at 621), but he should certainly not be the beneficiary of that failure where the court indicated a willingness to instruct on this issue. The decision not to tender a voluntary manslaughter instruction was a defense tactic, and the court was not obligated to instruct the jury *sua sponte* over defendant's request. *Garcia*, 169 Ill. App. 3d at 622.

We find that defendant has waived this issue since he not only failed to tender a voluntary manslaughter instruction but also refused to do so when the trial court proposed the instruction.

■ In the fifth issue on appeal, defendant contends, and the State concedes, that his conviction for aggravated battery should be vacated because it arose out of the same physical act, *i.e.*, the firing of a single shot which wounded Wesley Pucek, as his attempted murder conviction. We agree. Aggravated battery is a lesser included offense of the attempted murder conviction and both offenses were predicated on the single act of shooting Pucek. *People v. Washington* (1984), 127 Ill. App. 3d 365, 389, 468 N.E.2d 1285.

However, contrary to defendant's assertion, remandment for resentencing is not required where the trial court imposed separate sentences for each conviction and the record, as in the present case, does not indicate that a vacated conviction had any bearing or influence on the remaining convictions for murder or attempt murder. See *People*

*v. Geneva* (1990), 196 Ill. App. 3d 1017, 1029, 554 N.E.2d 556; *People v. Poe* (1984), 121 Ill. App. 3d 457, 463, 459 N.E.2d 667; *People v. Hines* (1982), 105 Ill. App. 3d 35, 38, 433 N.E.2d 1137; *People v. Wilson* (1981), 93 Ill. App. 3d 395, 397, 417 N.E.2d 146.

Defendant next asserts that he was not proven guilty of each charge beyond a reasonable doubt. Defendant argues that the evidence was contradictory and inconsistent, and that it failed to establish the requisite intent element for the murder of Marty Glines and the attempted murder of Wesley Pucek.

Since we vacate the aggravated battery conviction, we need not consider this charge in defendant's challenge to the sufficiency of evidence.

It is well established that a criminal conviction will not be set aside unless the evidence is so improbable or unsatisfactory that it creates a reasonable doubt of the defendant's guilt. (*People v. Collins* (1985), 106 Ill. 2d 237, 261, 478 N.E.2d 267.) " '[T]he relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' " (Emphasis in original.) *Collins*, 106 Ill. 2d at 261, quoting *Jackson v. Virginia* (1979), 443 U.S. 307, 319, 61 L. Ed. 2d 560, 573, 99 S. Ct. 2781, 2789.

The jury as the trier of fact, not the reviewing court, must assess the credibility of the witnesses, determine the weight to be given their testimony, evaluate the inferences to be drawn from the evidence, and resolve any conflicts in the evidence. (*People v. Young* (1989), 128 Ill. 2d 1, 51, 538 N.E.2d 461 (and cases cited therein).) Thus, any discrepancies perceived by defendant in the testimony of the witnesses were within the province of the jury to consider and resolve.

The element of intent can be established by the surrounding circumstances, and the intent to take a life may be inferred from the character of the assault, the use of a deadly weapon, and other circumstances. (*People v. Manzo* (1989), 183 Ill. App. 3d 552, 560, 539 N.E.2d 237.) The very act of firing a gun at a person supports the conclusion that the shooter did so with an intent to kill. *Manzo*, 183 Ill. App. 3d at 560.

The uncontroverted testimony of the occurrence witnesses and the attempted murder victim revealed that defendant had a gun, aimed and shot Wesley Pucek, and within seconds a subsequent gunshot was fired killing Marty Glines. From our examination of the record in the light most favorable to the prosecution, we conclude that a

rational trier of fact must inescapably have found defendant guilty of the murder of Marty Glines and the attempted murder of Wesley Pucek.

Lastly, we reject defendant's contention that the 30-year sentence imposed for his murder conviction is excessive.

Absent an abuse of discretion, a reviewing court will not disturb a sentence which falls within the statutory limits. *People v. Lambrechts* (1977), 69 Ill. 2d 544, 372 N.E.2d 641; *People v. Abernathy* (1989), 189 Ill. App. 3d 292, 315, 545 N.E.2d 201; see also *Andrews*, 132 Ill. 2d at 464 (an abuse of discretion standard is used to determine whether a sentence is excessive).

■■ In 1987, the statutorily mandated prison term for first degree murder ranged from 20 to 40 years. (Ill. Rev. Stat. 1985, ch. 38, par. 1005—8—1(a)(1).) Effective January 1, 1988, the maximum prison term for first degree murder was increased to 60 years. (Ill. Rev. Stat. 1987, ch. 38, par. 1005—8—1(a)(1).) Thus, defendant's 30-year term clearly falls within the range required by statute. In addition, defendant acknowledges, and the record confirms, that the sentencing judge considered defendant's youth, lack of gang affiliation, insignificant prior criminal record, and rehabilitative potential. We conclude that the 30-year sentence was not an abuse of the trial court's discretion.

Affirmed in part; vacated in part.

RIZZI and TULLY, JJ., concur.