THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. MARTIN AGUIRRE, Defendant-Appellant.

Third District   No. 3—92—0040

Opinion filed March 19, 1993.

Scott R. Guido, of Gary L. Gearhart & Associates, of La Salle, for appellant.

Edward Burmila, Jr., State's Attorney, of Joliet, and Joan M. Kripke, of Chicago (John X. Breslin, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE SLATER delivered the opinion of the court:

Following a jury trial, defendant Martin Aguirre was convicted of two counts of unlawful delivery of a controlled substance (Ill. Rev. Stat. 1991, ch. 56½, par. 1401) and sentenced to two concurrent terms of 10 and 8 years in prison. On appeal defendant argues that: (1) he was denied a fair trial due to the State's improper use of pe-

remptory challenges during jury selection; (2) the trial court erred in instructing the jury on the theory of accountability; (3) he was entrapped into committing the charged offenses; and (4) he was not proven guilty beyond a reasonable doubt. We affirm.

Count I of the indictment charged that on March 18, 1991, the defendant and Alfredo Diaz delivered more than 15 but less than 100 grams of a substance containing cocaine. Count II alleged that on March 8, 1991, defendant and Alfredo Diaz delivered more than 1 but less than 15 grams of a substance containing cocaine.

At the close of *voir dire*, defense counsel made a motion to discharge the jury, claiming that the State had used peremptory challenges to exclude two Hispanic members of the venire on the basis of their race. (See *Batson v. Kentucky* (1986), 476 U.S. 79, 90 L. Ed. 2d 69, 106 S. Ct. 1712.) Following a hearing, the court denied the motion.

At trial, Special Agent William Fuentes testified that in March of 1991, he was working as an undercover narcotics agent for the Illinois State Police. He became acquainted with defendant and Alfredo Diaz through an informant. Fuentes stated that he first saw defendant on March 4 when he purchased cocaine from Diaz. On March 8, Fuentes called the residence of the defendant and Diaz in order to arrange another cocaine purchase. When defendant answered the phone, Fuentes said that he was a friend of Diaz and asked defendant if he could purchase an "eight ball" (one-eighth of an ounce) of cocaine. Defendant told Fuentes that he could purchase an "eight ball" for $250. Fuentes and defendant agreed to meet at 7 p.m. that evening to complete the transaction at a location designated by defendant.

At approximately 7 p.m., Fuentes arrived at the prearranged location in his undercover vehicle. He saw defendant and Diaz in a blue Honda automobile. Defendant and Diaz then entered Fuentes' vehicle. Diaz sat in the front passenger seat, and the defendant sat in the backseat. Diaz handed Fuentes a plastic bag containing a white powdery substance. Fuentes then took $250 from his pocket. Defendant took the money and handed it to Diaz. Fuentes then asked what the price would be for one ounce of cocaine, and defendant told him that the price would be $1,300 per ounce, decreasing to $1,200 if Fuentes bought 10 ounces. Fuentes said that he wanted to buy 10 ounces, and defendant said he would need 7 to 10 days to acquire that amount.

At approximately 2 p.m. on March 18, Fuentes called the defendant's residence and spoke with defendant. Fuentes asked if he could purchase five ounces on the 18th, and another five on another date. Defendant told Fuentes that he only had three ounces to sell. Fuentes

and defendant agreed to meet at 7 p.m. that evening to complete the transaction. Defendant suggested they meet in a Wendy's parking lot.

That evening, Fuentes met the defendant and Diaz in the Wendy's parking lot. Defendant and Diaz got into Fuentes' car. Diaz then handed Fuentes a dark plastic bag containing three small bags. Each of the small bags contained a white powdery substance. Fuentes asked about the quality of the cocaine, and defendant replied that it was good. Defendant told Fuentes that the price for the cocaine was $3,900. Fuentes then gave a signal and a surveillance team of police officers approached and arrested defendant and Diaz.

The testimony of members of the surveillance teams established that defendant and Diaz entered Fuentes' vehicle during the two transactions, but the surveillance officers were unable to see what transpired inside the car. The State presented evidence to establish that the bags given to Fuentes contained cocaine.

Defendant testified on his own behalf. He admitted that he spoke to Fuentes on the phone on March 8 and March 18 and that he was present during the two transactions. Defendant stated that Diaz was the one selling the cocaine and that he (defendant) was merely acting as a translator for Diaz. He testified that the only reason he spoke to Fuentes on the phone was because Diaz did not speak English. His only involvement was as an interpreter. He stated that he had never sold drugs and that he did not receive any compensation for translating for Diaz.

We first address defendant's contention that the trial court erred in denying his *Batson* motion. During *voir dire*, the State exercised two peremptory challenges to dismiss Joseph Alvarez and Fernando Acosta. Defendant contends that the State failed to articulate legitimate race-neutral explanations for the removal of these two Hispanic members of the venire.

*Batson* established a three-step analysis to determine whether or not the State used its peremptory challenges to remove prospective jurors on the basis of race. (*Batson v. Kentucky* (1986), 476 U.S. 79, 97, 90 L. Ed. 2d 69, 88, 106 S. Ct. 1712, 1723.) First, the defendant must establish a *prima facie* showing of discrimination. Second, if the defendant made the requisite showing, the burden shifts to the State to articulate a race-neutral explanation for striking the jurors in question. Finally, the trial court then "will have the duty to determine if the defendant has established purposeful discrimination." *Batson*, 476 U.S. at 98, 90 L. Ed. 2d at 88-89, 106 S. Ct. at 1724.

At the hearing on defendant's motion, the court determined that defendant had established a *prima facie* showing of discrimination

and asked the prosecutor to provide reasons for excluding Mr. Alvarez and Mr. Acosta. The State's Attorney gave the following explanation regarding Mr. Alvarez:

"What the reason [*sic*] I exercised my peremptory challenge against this guy was because, your Honor, I felt that I had seen him as a witness or friend of a witness in another case approximately—I don't even know what case it was.

But before I came [*sic*] the narcotics chief, I was involved in a lot of gang crimes and lot of gang activity. And my feeling was that I recognized this person from another time, but I wasn't sure when."

The prosecutor explained her challenge of Mr. Acosta as follows:

"The most important thing that I remember about Mr. Acosta, and why I exercised my peremptory challenge is because of the way he answered questions.

He either said yes or no, he didn't offer any type of explanation as to anything. He was very tight lipped. It was my impression, your Honor, that he was not happy or excited or interested in the proceedings at all. And I got that from his demeanor in the way he acted in the courtroom. He gave short, crisp, sharp answers.

I thought he was the type—and he acted like he was not happy to be there. And I thought that since the State is the one that brings a person to court to serve on a jury, that he might hold some type of hostility toward the State. I remember him sitting back, chewing his gum and not a happy person. He seemed a mean individual to me, and that is why I excused him."

The trial court found the prosecutor's reasons to be race-neutral and denied the defendant's motion to discharge the jury.

The State makes a number of arguments in response to defendant's *Batson* claim. We agree with the State's contention that it was not against the manifest weight of the evidence for the trial court to find the prosecutor's reasons for exclusion to be race-neutral.

Initially, we note that a prosecutor's explanation of the use of a peremptory challenge must be clear, legitimate, and race-neutral. (*Batson*, 476 U.S. at 97-98, 90 L. Ed. 2d at 88-89, 106 S. Ct. at 1723-24.) However, the explanation need not rise to the level that justifies a challenge for cause. (*People v. Baisten* (1990), 203 Ill. App. 3d 64, 560 N.E.2d 1060.) "Unless a discriminatory intent is inherent in the prosecutor's explanation, the reason offered will be deemed race neutral." (*Hernandez v. New York* (1991), 500 U.S. 352, 360, 114 L. Ed.

2d 395, 406, 111 S. Ct. 1859, 1866.) The trial judge has a twofold responsibility concerning the explanations of the prosecutor: to assess the genuineness of the prosecutor's assertions and to determine whether those assertions are indeed legitimate and race-neutral. (*People v. Mack* (1989), 128 Ill. 2d 231, 238-39, 538 N.E.2d 1107, 1111.) Whether the State has met its burden is a question of fact, turning largely on the credibility of the prosecutor. (*Hernandez*, 500 U.S. at 365, 114 L. Ed. 2d at 409, 111 S. Ct. at 1869.) The trial judge's determination is therefore entitled to great deference and will not be disturbed on review unless it is against the manifest weight of the evidence. *People v. McDonald* (1988), 125 Ill. 2d 182, 530 N.E.2d 1351.

■ The prosecutor stated that she excluded Mr. Alvarez because she recognized him from an earlier case which possibly involved gang activity. This explanation, if true, was certainly a legitimate and race-neutral reason for exercising a peremptory challenge. The trial judge was in the best position to assess the genuineness of the prosecutor's assertions, and we will not disturb his findings. See *People v. Buford* (1992), 235 Ill. App. 3d 393, 601 N.E.2d 1099.

The prosecutor excluded Mr. Acosta because he was "tight-lipped" and seemed "uninterested" in the proceedings. Courts reviewing *Batson* claims have repeatedly approved the exercise of peremptory challenges on the basis of an individual's courtroom conduct or demeanor. (*People v. Young* (1989), 128 Ill. 2d 1, 538 N.E.2d 453; *People v. Mack* (1989), 128 Ill. 2d 231, 538 N.E.2d 1107; *People v. Lovelady* (1991), 221 Ill. App. 3d 829, 582 N.E.2d 1217.) Our supreme court has held that demeanor "has anciently been regarded as being of significance. The demeanor of a prospective juror has traditionally been a factor of importance in jury selection." (*Young*, 128 Ill. 2d at 20, 538 N.E.2d at 457.) A peremptory challenge was held to be legitimate where the prosecutor stated that he "was not too happy with [the venireperson's] demeanor and how he answered the questions." (*People v. Talley* (1987), 152 Ill. App. 3d 971, 987, 504 N.E.2d 1318, 1328; see also *People v. Peters* (1986), 144 Ill. App. 3d 310, 494 N.E.2d 853 (juror's hesitation in responding to questions); *People v. Buford* (1992), 235 Ill. App. 3d 393, 601 N.E.2d 1099 (juror interrupted questioning to get cough drop).) In light of the acceptance of courtroom demeanor as a legitimate basis for a peremptory challenge, we cannot say that the prosecutor failed to give a legitimate, race-neutral reason for excluding Mr. Acosta.

Based on the record before us, and in view of the deference to be accorded to the trial judge's findings in these matters, we find the evidence supports the trial court's determination that the prosecutor did

not engage in purposeful discrimination. We therefore affirm the trial court's denial of defendant's *Batson* motion.

Defendant next contends that the trial court erred in instructing the jury that he could be found guilty based on the law of accountability. Defendant argues that he could not be held accountable for the conduct of Diaz because his only involvement in the drug transactions was as a translator. As the State points out, defendant failed to raise this argument in his post-trial motion. It is well settled that in order to preserve an issue for review, the defendant is required to object at trial and raise the issue in his post-trial motion. (*People v. Clark* (1992), 231 Ill. App. 3d 571, 596 N.E.2d 642.) Defendant has therefore waived this argument.

■ Even if we were to address defendant's argument, we would reject it. A person is accountable for the conduct of another when, either before or during the commission of an offense, with the intent to promote or facilitate its commission, he solicits, aids, or abets another in the planning or commission of that offense. (Ill. Rev. Stat. 1991, ch. 38, par. 5—2(c).) Only slight evidence of accountability is needed to justify the giving of an accountability instruction. *People v. Faysom* (1985), 131 Ill. App. 3d 517, 475 N.E.2d 945.

Even if defendant were merely a translator for Diaz as he claims, he was certainly aiding Diaz in the commission of the offense. One who acts as an interpreter or translator during a drug transaction is certainly facilitating the commission of the crime. Moreover, the record indicates that defendant did more than merely act as an interpreter. Defendant actually arranged the drug deals with Agent Fuentes. On both occasions he negotiated the entire transaction and quoted the prices for the different amounts of cocaine. It was the defendant who selected the times and locations for the completion of the drug transaction. Finally, defendant was actually present during both transactions. In light of this evidence, it was entirely proper for the trial judge to give the accountability instruction.

■ Defendant next argues that he was entrapped into committing the charged offenses. The well-established rule in Illinois is that the entrapment defense is not available to a defendant who denies committing the offense charged. (*People v. Gillespie* (1990), 136 Ill. 2d 496, 557 N.E.2d 894; *People v. Fleming* (1971), 50 Ill. 2d 141, 277 N.E.2d 872.)

> "The logical reasoning behind the long-standing entrapment defense rule is that it is both factually and legally inconsistent for a defendant to deny committing the offense and then to assert as a defense that he committed the offense, but only because of

incitement or inducement by the authorities." *Gillespie*, 136 Ill. 2d at 501, 557 N.E.2d at 897.

In the case at bar, defendant denied that he committed either of the charged offenses. Thus, the defense of entrapment is unavailable to him. Parenthetically, we note that even if defendant had properly raised the defense of entrapment, we would reject his argument since his conversations with Agent Fuentes clearly show his predisposition to commit the crimes charged. See *People v. Martin* (1991), 219 Ill. App. 3d 1064, 580 N.E.2d 575.

Finally, we address defendant's contention that he was not proven guilty beyond a reasonable doubt. When faced with a challenge to the sufficiency of the evidence, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *People v. Collins* (1985), 106 Ill. 2d 237, 478 N.E.2d 267.

We believe the evidence presented at trial was sufficient to support defendant's convictions for unlawful delivery of a controlled substance. As discussed above, the undisputed evidence showed that defendant negotiated and arranged two cocaine sales with an undercover officer and was then present when the transactions took place. Even if the jury chose to believe defendant's claim that he only acted as a translator during the transactions, the jury could still have reasonably found defendant guilty on an accountability theory. Factors to consider in determining a defendant's accountability include proof that the defendant was present during the commission of the crime without opposing or disapproving it, maintaining a close affiliation with his or her companions after the offense, and failing to report the crime. (*People v. Haynes* (1991), 223 Ill. App. 3d 147, 583 N.E.2d 1177.) All of these factors weigh against the defendant in this case. The evidence was sufficient to support the jury's verdict.

Defendant also appeals the denial of his motions for a directed verdict at the close of the State's case and again after the defense had rested. In light of our finding that defendant was proven guilty beyond a reasonable doubt, we affirm the trial court's denial of the motions.

For the reasons stated above, the judgment of the circuit court of Will County is affirmed.

Affirmed.

BARRY and LYTTON, JJ., concur.